[No. 6971. Decided December 7, 1907.]

THE STATE OF WASHINGTON, *Appellant*, v. CARRIE D.
                WALKER, *Respondent*.[1]

CONSTITUTIONAL LAW—CLASS LEGISLATION—POLICE POWER—LICEN-
SES—BARBERING. Laws 1901, p. 349, regulating the business of bar-
bering and requiring a license therefor, is not unconstitutional as
an abridgment of the liberty and natural rights of the citizen;
since it is a proper health regulation within the police power.

SAME—STATUTES—INVALIDITY OF PART—EFFECT. The unreason-
able provision restricting the granting of a license, for the practice
of the trade of barbering, to apprentices of two years standing, does
not render unconstitutional the whole act, Laws 1901, p. 349, regu-
lating such trade and requiring a license therefor.

RUDKIN, J., dissenting.

Appeal from a judgment of the superior court for Pierce
county, Snell, J., entered June 15, 1907, upon sustaining a
demurrer to the information, dismissing a prosecution for the
offense of engaging in the occupation of barbering without
having obtained a license. Reversed.

*H. G. Rowland, Robert M. Davis,* and *H. G. Fitch,* for ap-
pellant.

*Leo & Cass,* for respondent.

MOUNT, J.—The respondent was charged with the offense
of practicing the occupation of barbering in the city of Ta-
coma, without having obtained a certificate or license therefor,
under the act of March 18, 1901. (Laws 1901, page 349.)
The lower court sustained a demurrer to the information, upon
the ground that the said act is unconstitutional, and dis-
missed the action. The state appeals.

The only question in the case is whether the act is valid
under the state and Federal constitutions. In the case of
*State v. Sharpless,* 31 Wash. 191, 71 Pac. 737, 96 Am St.

[1]Reported in 92 Pac. 775.

893, the validity of this act was questioned upon several grounds, and we there held that the act was not unconstitutional upon any of the grounds claimed. Respondent now seeks to justify the ruling of the lower court upon the ground that the act is an abridgment of the liberty and natural rights of the citizen, which point was not passed upon in the *Sharpless* case. The case of *State ex rel. Richey v. Smith*, 42 Wash. 237, 84 Pac. 851, with the authorities therein cited, is relied upon as supporting the ruling of the lower court. That was a case where we were considering an act to regulate plumbing in certain cities of the state. We there said:

"The power of the legislature to make all needful rules and regulations for the health, comfort, and well-being of society cannot be questioned, but there are certain limits beyond which the legislature cannot go without trenching upon liberty and property rights which are safeguarded by the state and Federal constitutions."

We also said:

"Acts of similar import but relating to different professions, trades, and occupations have often been before this court. Thus, in *State v. Carey*, 4 Wash. 424, 30 Pac. 729, an act regulating the practice of medicine and surgery, was sustained. In *State ex rel. Smith v. Board of Dental Examiners*, 31 Wash. 492, 72 Pac. 110, and in *In re Thompson*, 36 Wash. 377, 78 Pac. 899, a similar act regulating the practice of dentistry was upheld. In *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, involving the validity of the act regulating the business of barbering, a similar ruling was made. But in *In re Aubrey*, *supra*, an act regulating the business of horseshoeing, was declared unconstitutional, and without the police power of the state. Some of the acts considered in the above cases were manifestly needful and proper for the protection of the public health, others were on the border line."

By these last words the writer of that opinion evidently referred to the act relating to barbering. After further discussing the authorities and particularly considering the case before us, we concluded as follows:

'We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure,

and that its interference with the liberty of the citizen brings it in direct conflict with the constitution of the United States."

We adhere to the rule and reasoning of that case. But there is a clear distinction between that case and this. The business of plumbing only remotely affects the public health. The skill or cleanliness of the plumber himself does not immediately affect the public any more than the skill or cleanliness of the ordinary scavenger affects it, because the business of plumbing does not bring the plumber in personal contact with the public. But the physician, the surgeon, the dentist, and the barber operate directly upon the person, and therefore affect directly the health, comfort, and safety of the public. We think this marks the principal distinction between that class of trades, professions, or callings which may be regulated by law for public health, comfort, and safety, and that class which cannot be so regulated without depriving a citizen of his natural rights and privileges guaranteed him by fundamental law.

Respondent further takes the position that the act is void because it is manifest therefrom that the same was not passed as a measure to insure the public health, but solely to create a monopoly of barbers in this state, and as supporting that position our attention is called to that part of § 10 which provides, as a prerequisite to obtaining a certificate of registration, that the applicant "has studied the trade for two years as an apprentice under or as a qualified and practicing barber in this state or other states." It is claimed that this provision was made to destroy schools where barbering was taught in this and other states, and permitted practicing barbers to limit the number of applicants by refusing to receive apprentices. This provision, no doubt, gives strong color to the charge made; but we think it is not of itself enough to avoid the whole act. The legislature or the board of examiners, when authorized so to do, may make and enforce reasonable rules and regulations in order to determine the qualification of

applicants to practice that occupation. Unreasonable, arbitrary provisions cannot be enforced. We think the provision quoted is both unreasonable and arbitrary. What the public is interested to know is that the barber is competent. How he has acquired his skill or knowledge is of minor importance. If he has qualified himself by attendance upon some school for that purpose, or by his own efforts, unassisted, or by having served an apprenticeship under some qualified barber, or in some other equally efficacious way, that is all that can reasonably be required of him. To limit the qualification to one particular way or to one particular place, where there are many universally recognized as equally good, and provide that none others need apply is no doubt unreasonable. The result is that this requirement of the act is void. But that does not render the whole act void. In order to sustain the judgment in this case, it is necessary to avoid the whole act, which we cannot do.

The judgment must therefore be reversed, and the cause remanded for further proceedings.

ROOT and DUNBAR, JJ., concur.

FULLERTON, J., concurs in the result.

HADLEY, C. J. and CROW, J., took no part.

RUDKIN, J. (dissenting)—The general principles underlying legislation of this kind were fully discussed by the writer in the case of the *State ex rel. Richey v. Smith*, 42 Wash. 237, 84 Pac. 851, and will not be restated here. I feel constrained, however, to quote again the language of Mr. Justice Peckham, in *People ex rel. Nechamcus v. Warden of City Prison*, 144 N. Y. 529, 39 N. E. 686:

"It seems to me most unfortunate that this court should, by a strained construction of the act as a health law, give its sanction to this kind of pernicious legislation. We shut our eyes to the evident purpose of the statute, and by means of maxims well enough in their way, but sadly out of place here, impute a purpose to the legislature which it plainly did not have, and

which, if it did have, it has failed to carry out, even conceding that the purpose could be legitimately affected by other means. This measure detracts from the liberty of the citizen acting as a tradesman in his effort to support himself and his family by the honest practice of a useful trade, and I think no court ought to sanction such legislation unless it tends much more plainly than does this act toward the preservation of the health of the public."

The majority concede that the act (Laws 1901, page 349) can only be sustained on the theory that "Shaving the face or cutting the hair or beard of any person either for hire or reward," involves the public health, safety and comfort. Let us examine the act in detail, for the purpose of ascertaining how and wherein the public health is safeguarded or protected.

Section 1 of the act declares it unlawful to follow the occupation of barbering in any incorporated city of the state, without first obtaining a certificate of registration as therein provided. Section 2 defines what shall constitute barbering. Section 3 provides for a board of examiners to be appointed by the governor and fixes their term of office. Section 4 makes provision for a president, secretary, and treasurer, a common seal, and headquarters. Section 5 makes provision for the treasurer's bond and that the cost thereof shall be paid out of the funds in his hands. Section 6 provides for the compensation and traveling expenses of the members of the board. Section 7 provides for a biennial report to the governor. Section 8 provides for examinations to be held by the board. Section 9 makes provision for the registration of those engaged in the occupation of barbering at the time of the passage of the act. Section 10 makes provision for the examination of applicants for certificates of registration under the act, and will be recurred to later. Section 11 provides for apprentices. Section 12 provides for the issuance of certificates of registration. Section 13 provides for the registration of the names of all persons to whom certificates may be issued under the act. Section 14 provides for the revocation of certificates. Section

15 provides a penalty for practicing the occupation of barbering in any city of the first, second or third class, without first obtaining a certificate of registration; or for using, or allowing towels to be used, on more than one person before such towels have been laundered, or razor, lather, or hair brushes, on more than one person before the same have been sterilized, or for employing an unregistered barber.

It will thus be seen that only sections 10, 14 and 15 refer, even remotely, to the public health, safety or welfare. Section 10 provides that before issuing a certificate of registration the board shall be satisfied that the applicant is: (1) Above the age of 18 years; (2) of good moral character; (3) free from contagious or infectious diseases; (4) has studied the trade for two years as an apprentice under a qualified and practicing barber in this or other states; (5) is possessed of the requisite knowledge to properly perform all the duties, including his ability in the preparation of tools used in shaving, cutting of hair and beard, and all the various services incident thereto; and (6) has sufficient knowledge of the common diseases of the face and skin to avoid the aggravation and spreading thereof in the practice of his trade.

The age limit is the first requirement. This is a matter of minor importance, but how it can affect the health, safety, or comfort of either the applicant or the public, I confess I do not know. The second requirement is that the applicant be of good moral character. Why a person should be debarred from the occupation of barbering because of his moral character, I do not know. Certainly neither trust nor confidence is reposed. It may be said that the barber may pick our pockets, but the act seems to favor that enterprise. The third requirement is that the applicant be free from contagious or infectious diseases. This is highly important, but I presume it will not be gainsaid that it is of equal or even greater importance that hotel clerks, ticket agents, conductors, bank cashiers, and all those engaged in the thousand and one of the

common vocations of life, with whom the public are brought in hourly contact, should be equally free from such diseases. Furthermore, how is the condition of the applicant to be determined. Just as one might expect under the provisions of such an act. By a board of barbers who are entirely ignorant on the subject. The next requirement is two years apprenticeship under some practicing barber. I will not add to the strictures of the majority on this requirement further than to say that it is but one of the *indicia* of the trust character of the act. The next requirement relates exclusively to the skill of the applicant in his trade, and in no manner affects the public health or safety. The last requirement is that the applicant have a sufficient knowledge of the common diseases of the face and skin to prevent their aggravation and spread. The legislature might well provide that razors, towels, and other instruments and appliances used in the trade should be sterilized and cleansed, and make the provision applicable to all parts of the state, and to all barbers within the state; for in the absence of some authoritative statement from the barber board, I will assume that a dirty towel is just as unsanitary in one community as in another. A commission, with the expense of maintaining it, and the unlawful and unjustifiable interference with the right of the citizen to engage in one of the common occupations of life, is neither a necessary nor an appropriate means to that end. This section also provides for the renewal of certificates each year. I was at first at a loss to know why a barber's certificate should not remain good until revoked, but the act answers that question. "All certificates shall be renewed each year, *for which renewal, a fee of fifty cents shall be paid.*" Section 14 provides for the revocation of certificates, for the conviction of crime, drunkenness or having or imparting any contagious or infectious disease. These provisions, as well as those of § 15, I have already discussed.

I have now reviewed every material provision of the act, and again ask how it can be sustained as a sanitary measure.

To paraphrase what we said in the *Richey* case: We are not permitted to inquire into the motives of the legislature, and yet, why should a court blindly declare that the public health is involved, when all the rest of mankind know full well that the control of the barber business by the board and its licensees is the sole end in view. We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure, and that its interference with the liberty of the citizen brings it in direct conflict with the constitution of the United States.

The judgment of the court below should be affirmed.