## TIMMONS v. MORRIS, Sheriff.

(District Court, W. D. Washington, S. D. February 14, 1921.)

No. 3001.

1. **Constitutional law ⊗═══275(1)—Health ⊗═══21—System of grading barbers held contrary to due process.**

The system of grading adopted by the Washington Board of Barber Examiners, under Laws Wash. 1901, p. 349, valid under the police power only as a measure for the health and safety of the public, under which system a very large percentage of the credits were given for matters which did not affect the health or safety of the people, but were merely matters of skill, is so arbitrary and capricious as to justify the presumption that it was intended thereby to leave it within the power of the board to refuse arbitrarily a license, which amounts to deprivation of liberty without due process of law, and violates Const. Amend. 14.

On Rehearing and Reargument.

2. **Constitutional law ⊗═══81—Health ⊗═══21—Barbering can be regulated only to protect health and safety.**

In so far as the practice of barbering is concerned, the public welfare and comfort—outside of what is included in its health and safety—are so insignificant as not to lend color to any right of regulation claimed under the police power of the state.

3. **Health ⊗═══21—System of grading barbers held not to effectuate purpose to protect health and safety.**

The system of grading applicants for barbers' licenses adopted by the Washington Board of Barber Examiners, under which the great preponderance was given to matters of mere mechanical skill, so that an applicant who displayed no knowledge essential to the protection of the health and safety of the public might be licensed if he displayed sufficient skill, while full knowledge would be insufficient to obtain a license if the applicant were not skilled, has no substantial relation to the public health, and therefore cannot be sustained under the police power.

Habeas corpus proceeding by Frank Timmons against Thomas Morris, as Sheriff of Pierce County, Wash. On demurrer to the amended petition. Demurrer overruled.

Browder Brown and J. W. A. Nichols, both of Tacoma, Wash., for petitioner.

William D. Askren, Pros. Atty., of Tacoma, Wash., for respondent.

CUSHMAN, District Judge. Petitioner is imprisoned for practicing the trade of a barber without a license, and sues to obtain his discharge from such imprisonment by the present habeas corpus proceedings.

Petitioner avers he is a barber, and has practiced his trade for 17 years, and has no other means of livelihood, and by his amended petition he attacks the constitutionality of chapter 172 of the Session Laws of the state of Washington of 1901, entitled:

"An act to regulate the practice of barbering, and licensing persons to carry on such practice, and providing punishment for its violation."

⊗═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

271 F.—46

The respondent orally demurs to amended petition.  In two decisions the constitutionality of this law has been upheld by the Supreme Court of the state of Washington, viz.:  31 Wash. 191, 71 Pac. 737, 96 Am. St. Rep. 893; 48 Wash. 8, 92 Pac. 775, 15 Ann. Cas. 257. Upon the authority of these decisions, relief must be denied for the petitioner upon this ground, and petitioner further avers:

"That the said board, acting under said statute and by authority thereof, have established a system of examination for applicants for license or certificate to practice barbering, under which system applicants are given credits, marks or points, graded from poor to excellent on the several subjects listed in said examination as follows, to wit:

| | | | |
|---|---|---|---|
| Haircut, | Poor | 10 | Excellent 24 |
| Shaving, | Poor | 10 | Excellent 24 |
| Cleanliness, | Poor | 0 | Excellent 8 |
| Razor honing, | Poor | 6 | Excellent 12 |
| Condition of Tools, | Poor | 0 | Excellent 8 |
| Time, | Poor | 4 | Excellent 10 |
| Deportment, | Poor | 0 | Excellent 6 |
| Written examination, | Poor | 2 | Excellent 8 |
| | | 32 | 100 |

—which examination petitioner was required to pass. * * *

"That after the examination taken by petitioner in November, 1919, the said board served the following notice upon petitioner, to wit:  'State Board of Barber Examiners of Washington.  Tacoma, Washington, Nov. 20, 1919.  Mr. Frank Timmons—Dear Sir:  You are hereby notified that you have failed to pass the examination prescribed by law for a certificate of registration as a barber in the state of Washington.  Your credits on such examination were: Haircut, 14; shaving, 17; cleanliness, 6; razor honing, 10; condition of tools, 6; time, 10; deportment, 6; written examination, 7—total, 76.  Necessary to pass, 80.  You are hereby notified because of your failure that you no longer hold a permit to work as a barber in the state of Washington.  State Board of Barber Examiners, A. A. Ciersch, President.  M. B. Bdigford, H. C. Pickering, Sec. Treas.'  And after examination before said board in May, 1920, the board served upon petitioner a like notice, in which petitioner was given the following credits:  Haircut, 10; shaving, 17; cleanliness, 7; razor honing, 10; condition of tools, 7; time, 10; deportment, 6; written examination, 6— total, 73.  Necessary to pass, 80.

"And petitioner shows to the court that, of all the said matters upon which said examination were had, two only of said items affect even remotely, if at all, the public morals, health, or safety, namely, the items of cleanliness and such matters of health as are embraced in said written examination, and that upon those two items, to wit, cleanliness and written examination petitioner was given each time 13 credits out of the 16 allowed for those two subjects, being more than the 80 per cent. required by the rules, notwithstanding which the said board marked petitioner down on the other seven subjects of the examination, in no manner affecting the public, so as to bring his average below the 80 per cent. and give excuse for refusing his license, and all in accord with and under the power and authority of the said statute so purporting to give to said board an autocratic right to grant or withhold at their pleasure and without any right of appeal."

[1] The effect of the foregoing is not only to aver the unconstitutionality of the statute, but the arbitrary exercise by the board of barber examiners created by it of the power conferred upon them under the act.  Regulations and examinations of the board must be restricted within the limits of that having to do with health and safety; it cannot be and it has not been contended that the public morals are affected by such trade.

Under the system of marking established by the board it appears that the credits obtainable on the first two subjects, "hair cutting" and "shaving," are 48 per cent. of the total, and that the range of markings for the two between "poor" and "excellent" is 28 per cent. of the total obtainable, and a loss of 20 per cent. of the total credits results in a denial of a license.

In view of the other matters considered upon such an examination, covering "cleanliness," "razor honing," "condition of tools," "time," "deportment," and "written examination," it is only reasonable to assume that the board, in considering the credits earned by the person examined on the first two matters, "hair cutting" and "shaving," eliminates from consideration those matters covered by the other headings, which include "cleanliness" and "condition of tools."

Eliminating all these other subjects from consideration, apparently there are only left to be included within the first two subjects "hair cutting" and "shaving," matters at most, if at all, of only minor importance, in so far as health and safety are concerned, which show that the percentage allowed for those two subjects in this scale adopted is out of all proportion to the importance reasonably to be attached thereto, and compels the conclusion that the system which has been so adopted under the act is arbitrary and capricious, and justifies the presumption that the practice established in the present instance is the one foreseen and pointed out by Judge Rudkin in his dissenting opinion in the foregoing cases as bound to grow up under such a statute.

The preponderating effect given the percentages under the first two subjects, prima facie, upon this demurrer, justifies the conclusion that by the adoption of such a scale it was intended to leave it within the power of the board to arbitrarily refuse a license upon occasion. Such a result and practice is the deprivation of liberty without due process of law, and violates the Fourteenth Amendment to the Constitution.

The demurrer to the amended petition is overruled.

### On Rehearing and Reargument.

Browder Brown and J. W. A. Nichols, both of Tacoma, Wash., for petitioner.

J. W. Selden, Pros. Atty., and Rex. S. Roudebush, Asst. Pros. Atty., both of Tacoma, Wash., for respondent.

A former decision was rendered in the present case, in which the Barbers' License Law was upheld upon the authority of State v. Sharpless, 31 Wash. 191, 71 Pac. 737, 96 Am. St. Rep. 893, and State v. Walker, 48 Wash. 8, 92 Pac. 775, 15 Ann. Cas. 257. But it was further held by this court that the regulations adopted thereunder by the board of barber examiners, created by the act, were arbitrary and capricious, and in no way calculated to protect the health of the public. Upon the representation that respondent had not presented legal authorities upon the former hearing touching the police power of the state, a rehearing and reargument has been had. In ruling upon the present motion, an attempt will be made to avoid restatement of matters set out in the former memorandum decision.

[2] The court is convinced that, in so far as the practice of barbering is concerned, the public welfare and comfort—outside of, and beyond what is included in its health and safety—are so insignificant as not to lend color to any right claimed under the police power of the state. The Barber Law was first upheld in State v. Sharpless, 31 Wash. 191, 71 Pac. 737, 96 Am. St. Rep. 893, by the Supreme Court of this state, on the ground that it was a health measure. It was therein stated:

"The right of the Legislature to enact laws for the promotion of health is now universally sustained as a police regulation." 31 Wash. 195, 71 Pac. 738, 96 Am. Rep. 893.

"Other questions, going more to the wisdom of the act, are presented by appellant; but these questions are for the Legislature, and not for the court. For example, it is urged that the act is for the protection of the health of the people of the state; that the people outside of cities and incorporated towns are as much entitled to be treated by qualified and cleanly barbers as those people who live in incorporated cities and towns. * * * There may be some good reason why barbers in larger cities should be more careful and cleanly than barbers in smaller places. * * *" 31 Wash. 200, 201, 71 Pac. 740, 96 Am. Rep. 893.

Thereafter the Supreme Court of this state, in State ex rel. Richey v. Smith, 42 Wash. 237, 84 Pac. 851, 5 L. R. A. (N. S.) 674, 114 Am. St. Rep. 114, 7 Ann. Cas. 577, in holding the act regulating plumbing in said state unconstitutional, after reviewing certain Washington state decisions, said:

"Some of the acts considered in the above cases were manifestly needful and proper for the protection of the public health; others were on the border line." 42 Wash. 242, 84 Pac. 852, 5 L. R. A. (N. S.) 674, 114 Am. St. Rep. 114, 7 Ann. Cas. 577.

In reviewing this case in State v. Walker, 48 Wash. 8, at page 9, 92 Pac. 775, at page 776 (15 Ann. Cas. 257), the court said:

"By these last words (that is, 'others were on the border line') the writer of that opinion evidently referred to the act relating to barbering."

The above parenthesis is inserted by this court in explanation of the words referred to.

It again clearly appears, in the latter case, that the Barber Law was only upheld as a health measure, and that the Plumbing Law was held unconstitutional because not a health measure, for the court quoted from its plumbing decision:

"We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure, and that its interference with the liberty of the citizen brings it in direct conflict with the Constitution of the United States." 48 Wash. 9, 10, 92 Pac. 776, 15 Ann. Cas. 257.

—and then said:

"We adhere to the rule and reasoning of that case. But there is a clear distinction between that case and this. The business of plumbing only remotely affects the public health. The skill or cleanliness of the plumber himself does not immediately affect the public, any more than the skill or cleanliness of the ordinary scavenger affects it, because the business of plumbing does not bring the plumber in personal contact with the public. But the physician, the surgeon, the dentist, and the barber operate directly upon the person, and therefore affect directly the health, comfort, and safety of the public. We

think this marks the principal distinction between that class of trades, professions, or callings which may be regulated by law for public health, comfort, and safety, and that class which cannot be so regulated without depriving a citizen of his natural rights and privileges guaranteed him by fundamental law." 48 Wash. 10, 92 Pac. 776, 15 Ann. Cas. 257.

Petitioner, in his amended petition, avers:

"That the said Board (of Examiners) acting under said statute and by authority thereof, have established a system of examination for applicants for license or certificate to practice barbering under which system applicants are given credits, marks or points, graded from poor to excellent on the several subjects listed in said examination as follows to wit:—

| | | | | |
|---|---|---|---|---|
| Haircut, | Poor | 10 | Excellent | 24 |
| Shaving, | Poor | 10 | Excellent | 24 |
| Cleanliness, | Poor | 0 | Excellent | 8 |
| Razor honing, | Poor | 6 | Excellent | 12 |
| Condition of tools, | Poor | 0 | Excellent | 8 |
| Deportment, | Poor | 0 | Excellent | 6 |
| Time, | Poor | 4 | Excellent | 10 |
| Written examination, | Poor | 2 | Excellent | 8 |
| | | 32 | | 100 |

—which examination petitioner was required to pass."

An applicant under the regulations, in order to obtain a license, must receive at least 80 points out of a possible 100. Contrasted and compared with the other subjects, the first two above—hair cutting and shaving—contemplate mere style and mechanical skill.

The following parallel columns show, in the one column, the only provisions of the state Barber Law that can be held to affect the public health, including those providing for an examination of applicants, and, in the other column, the regulations of the board of examiners created under the act, and the system of markings provided by them, which regulations have heretofore, by this court, been held to be so arbitrary and capricious as to entitle the petitioner herein to his discharge upon habeas corpus. The latter are placed opposite those provisions of the statute to which they can alone refer.

**Provisions from the State Law.**

**Marking of Applicant upon Examination.**

Section 14 provides for the revocation of certificates for the conviction of crime, drunkenness, or having or imparting any contagious or infectious disease.

There is nothing in the system of markings under this, except: "Cleanliness—Poor 0. Excellent 8."

Section 15 provides a penalty for using or allowing towels to be used on more than one person before such towels have been laundered, or razors, lather, or hair brushes on more than one person before the same have been sterilized.

There is nothing in the system of marking under this, except: "Cleanliness—Poor 0. Excellent 8." "Condition of tools—Poor 0. Excellent 8."

Section 10 provides that, before issuing a certificate of registration as a barber, the board shall be satisfied that the applicant is

(1) Above the age of 18 years.

There is nothing touching this in the regulations before the court.

(2) Of good moral character.

There is nothing touching this in the regulations before the court.

(3) Free from contagious or infectious disease.

(4) Has studied the trade for two years as an apprentice under or as a qualified and practicing barber in this state or other states.

(5) Is possessed of the requisite knowledge to properly perform all duties including an ability to prepare the tools used in shaving, cutting hair and beard, and all the various services incident thereto.

(6) Has sufficient knowledge concerning the common diseases of the face and skin to avoid the aggravation and spreading thereof in the practice of his trade.

There is nothing in the system of marking under this, except: "Cleanliness—Poor 0. Excellent 8."

This provision of the law was held unconstitutional by the state court, that court saying: "The Legislature or the board of examiners, when authorized, so to do, may make and enforce reasonable rules and regulations in order to determine the qualification of applicants to practice that occupation. Unreasonable, arbitrary provisions cannot be enforced. We think the provision quoted is both unreasonable and arbitrary. What the public is interested to know is that the barber is competent." State v. Walker. 48 Wash. 8, at pages 10 and 11, 92 Pac. 775, at page 776 (15 Ann. Cas. 257).

"Haircut—Poor 10. Excellent 24. Shaving—Poor 10. Excellent 24. Razor honing—Poor 6. Excellent 12. Time—Poor 4. Excellent 10. Deportment—Poor 0. Excellent 6. Written Examination—Poor 2. Excellent 8."

"Written examination—Poor 2. Excellent 8."

Subdivision 5, above, is a very vague and indefinite provision. Properly construed, it should be narrowed to matters affecting the public health; but the board has evidently under it sought to grasp power beyond that which the Legislature could confer, and to exercise it in an arbitrary and capricious manner; for under this provision alone can be grouped most of the subjects upon which applicants are examined and the great majority of the marks that can be obtained on such examination.

[3] If it be conceded that, in this method of examination and scale of rating upon such examination, the written examination provided for has solely to do with matters affecting the public health, and that such regulation was made under that subdivision of section 10 requiring the board to examine and determine whether the applicant had sufficient knowledge concerning the common diseases of the skin to avoid the aggravation and spreading thereof in the practice of his trade, it comes to this: That, in the ratings provided for only 24 points out of 100 have to do with the public health.

It is possible, under this scale, for a man to pass and be licensed, though he has only got 4 points out of the 24 in those subjects affecting the public health, provided he is excellent in the nonessentials, in so far as health is concerned; while the applicant who is perfect in so far as matters affecting health are concerned, and yet "poor" in deportment, razor honing, and time taken in work—matters that can in no sense be held to touch the public health or safety—would be deprived of the right to practice barbering.

That the system of marking is such as to thwart, rather than carry out the provisions of the law, is not only shown by the large percentages allowed in the markings for the nonessentials, but is further shown by the fact that, in the nonessentials, there is a substantial amount allowed as a minimum in the markings, while, in the essentials of cleanliness and condition of tools, the minimum is "0," and on the written examination only "2." The total of the minimum marks allowed even the poorest on these nonessential subjects is 30, which constitutes practically one-third of the possible 100 obtainable, a number exceeding the largest total obtainable on the combined essentials, which is 24.

It is therefore palpably clear that these regulations have no real ·or substantial relation to the public health, but are rather designed to defeat those statutory provisions in the Barber Law for the protection of the public health, to subordinate essentials to nonessentials, and to allow the board scope for purely arbitrary action. Under these regulations, any purpose to protect the public health, manifestly, has become so highly attenuated "that nothing lives 'twixt it and perfect silence."

Upon re-consideration, the former decision, overruling respondent's oral demurrer to the amended petition, is adhered to, and respondent's written demurrer is overruled.