MARX et al. v. MAYBURY, Director of Licenses of Washington, et al.

District Court, W. D. Washington, N. D. December 4, 1929.

No. 674.

See, also, 30 F.(2d) 839.

E. D. Phelan, of Seattle, Wash., for plaintiffs.

John H. Dunbar, Atty. Gen., and L. B. Donley, Asst. Atty. Gen., of Washington, and Ewing D. Colvin, Pros. Atty., of Seattle, Wash., for defendants.

Before RUDKIN, Circuit Judge, and NETERER and McNARY, District Judges.

NETERER, District Judge (after stating the facts). Anciently the craft of barbering was dignified as a profession and conjoined with the art of surgery. It is spoken of by the Prophet Ezekiel, 5, 1, about 595 B. C. It was practiced in oriental countries by shaving the whole or part of the head and by ancient Egyptians, by Greeks and Romans, by shaving the face and cutting the hair, and by the Israelites by shaving or plucking the beard as a sign of mourning. The art of barbering was practiced historically in Greece 420 B. C., and was brought from Sicily to Rome in 299 B. C. During the reign of Edward IV of England, the barbers were incorporated by law; and by 32 Henry VIII (C) 42, were united with the surgeons, but their activities were limited to minor operations of blood letting and extracting teeth and hair clipping and shaving. In 1745 the barbers and surgeons were each separated into a distinct corporation by 18 George II, c. 15. The barber's pole with the spiral red is said to symbolize the winding of a ribbon around the arm previous to letting blood. The craft of barbering has been dignified for many centuries by public notice and legislative enactment granting and limiting power.

The laws of Washington define barbering as shaving or trimming the beard or cutting the hair, giving facial or scalp massages, or treatment with oils, cream lotions, and preparations, either by hand or mechanical appliances, singeing or shampooing or dyeing the hair, or applying tonics, cosmetic preparations, antiseptic powders, oils, clay, or lotions to the scalp, face, neck, or upper part of the body. The act is broad in its scope and comprehensive in its provision. The court must know that the barber, like the surgeon, physician, and dentist, operates directly upon the upper part of the body of male and female of practically all ages, and may affect directly the health, comfort, and safety of the public. The protection against disease communicable by contact with unclean hands or unclean appliances, or exposure of the boys and girls, women and men, to unclean minds and bad morals, is a public concern. The act, among other things, requires that a barber be a person of good moral character. Knowledge of the treatment of face and scalp, singeing and dyeing the hair, application of lotions, cosmetics, antiseptics, etc., requires study, training, and experience. The state has inherent power for public welfare to "govern men and things," and within the Fifth and Fourteenth Amendments may regulate "the sweeping of chimneys" and fix fees therefor, or "the rates or commissions of auctioneers" (Munn v. Illinois, 94 U. S. 113, at page 125, 24 L. Ed. 77), and with such adjudged power, where treatment requires personal touch, it must be held to have power to prescribe regulations for the good of the people's health, protection, comfort, convenience, and morals not in derogation of the powers of the Congress or organic law. W. U. Tel. Co. v. Pendleton, 122 U. S. 347, at page 359, 7 S. Ct. 1126, 30 L. Ed. 1187; Timmons v. Morris (D. C.) 271 F. 721; State v. Walker, 48 Wash. 8, 92 P. 775, 15 Ann. Cas. 257; State v. Sharpless, 31 Wash. 191, 71 P. 737, 96 Am. St. Rep. 893; State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422; State v. Armeno, 29 R. I. 431, 72 A. 216; State v. Briggs, 45 Or. 366, 77 P. 751, 78 P. 361, 2 Ann. Cas. 424; Moler v. Whisman, 243 Mo. 571, 147 S. W. 985, 40 L. R. A. (N. S.) 629, Ann. Cas. 1913D, 392; Ex parte Lucas, 160 Mo. 218, 61 S. W. 218; Com. v. Ward, 136 Ky. 146, 123 S. W. 673; Cooper v. Rollins, 152 Ga. 588, 110 S. E. 726, 20 A. L. R. 1105; People v. Logan, 284 Ill. 83, 119 N. E. 913.

Large discretion is vested in the Legislature, not only to determine what the public interest requires, but to adopt measures necessary for such protection (Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 32 L. Ed. 346), and every reasonable presumption must be indulged in favor of the statute. Sinking Fund Cases, 99 U. S. 700, 25 L. Ed. 496. The Constitution must, however, guide the judicial determination, and, where the measure adopted is appropriate and calculated to accomplish the end sought, the legislative discretion is not for review by the court. The conclusion must follow that the state has power to enforce reasonable regulation of the barber trade. Marx v. Maybury (D. C.) 30 F. (2d) 839, is not to the contrary.

The plaintiffs attack the act as a whole, and challenge certain sections and provisions of sections. The power to regulate the "barber trade" includes students in "barber col-

leges" as well as teachers, where they practice upon the public. The act only has application in this case where the plaintiff Roy Marx, through the college by employees or students, practices upon the public, and there is nothing in sections 2, 3–A, 4, 5, and 6 of the act which inhibits any constitutional right of plaintiff. Whether any provision of the act is unreasonable and abrogates the right of others must be determined when the parties directly affected complain. Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; Oliver Mining Co. et al. v. Lord et al., 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 S. Ct. 167, 59 L. Ed. 364; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239.

The qualification of Roy Marx as licensee does not give him the right to complain of reasonable restriction upon others, nor may he cause others to practice barbering, as defined, through the agency of a "college" owned and controlled by him in violation of the act. Nor is the provision in section 14, "every such school or college shall at all times maintain on each window therein, facing upon any street, a sign in plain letters at least six inches high composed of the words 'barber school' or 'barber college,' placed as nearly as practicable in the center between top and bottom of any such window, and, if desired by the operator of such school or college, underneath these words, a sign with letters no [less nor] greater in size, composed of the words 'shaving' and/or 'hair cutting,' giving the price charged; and such school or college shall not at any time keep or maintain upon any of the windows or doors of such school or college any sign or words 'barber shop,' 'expert barbering,' or other similar words," unreasonable. The public is entitled to know the relation the shop bears to a standard of efficiency and whether treatment is given by experienced barbers or students.

The power given the director of licenses to revoke or withhold permit from a "Barber School" or "Barber College" when in his judgment it is not financially able to carry out any contract for instruction, uncontrolled by any standard or rule or provision of review, is repugnant to the due process clause of the Fourteenth Amendment. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, at pages 121, 122, 49 S. Ct. 50, 52, 73 L. Ed. 210, where it is said:

"The section purports to give * * * authority—uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home. * * * There is no provision for review. * * * They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. Yick Wo v. Hopkins, 118 U. S. 356, 366, 368, 6 S. Ct. 1064, 30 L. Ed. 220. The *delegation of power* so attempted is repugnant to the due process clause of the Fourteenth Amendment. Eubank v. Richmond, 226 U. S. 137, 143, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123; Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330."

This attempted delegation of power cannot be sustained. A decree may be presented dissolving the temporary restraining order as to all provisions of the act save only the last provision of the act referred to, as to which it is to be made permanent.