## W. C. CORBETT V. CHARLES ALLMAN.

### No. 3000.   Decided May 31, 1922.

### (242 S. W., 456.)

**1.—Vendor and Purchaser—Rescission—Limitation—Improvements—Equities
—Unauthorized Dismissal.**

By an executory contract for sale of land under which the vendee took
possession and made improvements, he was to pay the balance of purchase
money on the vendor clearing up a cloud on title and executing a warranty
deed. This the vendor failed to do, but sued to recover the land; the vendee,
in defense, pleading limitation against the purchase money debt, and the
right to payment for improvements if plaintiff recovered. Held that neither
party was entitled to equitable relief, neither having done or offered to do
equity. A settlement by which the vendor received the purchase money
agreed to be paid for the land, and the vendee acquired the land through
judgment and by dismissal of the action pending in the Supreme Court on
writ of error obtained by the vendor, gave the vendor all that he was entitled
to or could recover. His motion to reinstate the writ of error because dis-
missed by counsel without authority and in prejudice of his rights must be
denied, all that he could recover on reinstatement being already obtained
by the settlement. (Pp. 549-553).

**2.—Attorney and Client—Settlement by Attorney.**

A settlement of suit and dismissal thereof in the Supreme Court by
the attorney for plaintiff in error is held to have been authorized by a letter
from his client (set forth in opinion) the settlement being in accordance
with the terms thereby offered. (Pp. 551, 554).

Error to the Court of Civil Appeals for the Second District, in an
appeal from Eastland County.

The writ of error was obtained herein by Corbett on a judgment
of the Court of Civil Appeals rendered on his appeal from that of
the District Court in his suit against Allman for the recovery of land.
A settlement of the matters was made by the attorneys for both
parties and the suit dismissed by their agreement January 13, 1918.
Plaintiff in error, by leave of the court, moved, on June 11, 1919, to
reinstate the case, as having been dismissed by his counsel on a settle-

ment made without authority, and the opinion was rendered in refusing such motion.

*Baker, Botts, Parker & Garwood,* and *Thompson, Knight, Baker & Harris,* for plaintiff in error Corbett.

An attorney at law who is employed to represent a client in legal proceedings has no implied authority to make a compromise of his client's cause of action and surrender his client's property. His want of authority being patent, an attempted compromise of the client's cause or action, and an attempted surrender of the client's property, are voidable acts unless it be shown affirmatively that the client had authorized the attorney's acts.

An attorney employed to represent a client in a suit for the recovery of real estate, and who obtains a decree vesting title to such property in his client, charged, however, with the pecuniary burden of improvements in good faith, and who appeals from so much of the judgment only as fixes a burden on the real property for the value of the improvements, under express instructions of his client to complain of such aspect only of the judgment, is wholly without authority to compromise the cause, to surrender his client's property to his adversary, and take such appellate proceedings as will destroy his client's title to the property sued for.

An attorney who compromises without authority his client's cause of action entrusted to him, and surrenders, without authority, his client's property to his adversary, and who dismisses, without authority, an appeal being prosecuted by his client to perfect title to the property sued for, acts in bad faith professionally, and is guilty of a fraud upon his client, and of a fraud upon the court in which the appeal is pending, regardless of his belief as to his legal right to commit the acts stated, and his client is not bound by said acts.

An attorney who, without authority from his client compromises his client's cause of action, and files an agreement of dismissal of writ of error proceedings in the Supreme Court, purporting to have authority so to do from his client, and who procures order of dismissal from that court by falsely representing to the court that the cause of action has been settled, and that he is authorized by his client to obtain a dismissal of the cause, thereby prevailing upon the Supreme Court, under such misrepresentations of fact, not to exercise its lawful jurisdiction to dispose of said pending cause upon its merits, practices a fraud upon the jurisdiction of the Supreme Court, and practices a fraud upon said court in the lawful exercise of its jurisdiction, by reason of which the Supreme Court, on motion, will treat all such proceedings as voidable, and will vacate its dismissal orders and reinstate the cause.

Courts of general jurisdiction, including the Supreme Court of Texas, have power, both inherent and statutory, to inquire into any

fact extraneous the record touching its jurisdiction, its exercise or non-exercise of jurisdiction, the status of parties, the authority of counsel, the reputed settlement of the controversy, and either during the term or after the term make such orders as are necessary to protect the litigants and the court and to administer essential justice in the cause. Under the English system relief was administered through writs *coram nobis,* or *coram vobis,* bills of review, new trials, bills for new trials, appeals, writ of error, *et cetera.* As a substitute for much of the ancient system that was technical and now archaic, such relief is now given in the Supreme Court of Texas upon motion and after notice to parties adversely interested.

No adequate remedy exists for the rectification for the wrong complained of in this motion except through action in this court vacating the order of dismissal and reinstating the cause, for all parties, and particularly plaintiff in error, are entitled to have this cause disposed of by the Supreme Court upon the record now in this court, and not otherwise.

No laches is shown where it is admitted that the client was ignorant of the sacrifice of his rights until after the expiration of the term at which the dismissal order was made, and where the settlement was promptly repudiated by the client and application made to this court for relief as soon as adequate investigation of the facts and law could be made.

The Supreme Court has inherent power, independent of statute, to grant relief in the character of case here presented. Such inherent power, which is the natural outgrowth and incident to the obligation of the court to administer justice, is further fortified in this State by statutory enactment. Articles 1525, 1526, 1560, Vernon's Sayles' Statutes (1914); Seiter v. Smith, 105 Texas, 205; Marchall v. Seiter, 147 S. W., 226; Cruger v. McCracken, 87 Texas, 584; Tommey v. White, 4 H. L. C., 314; Jones v. Gammel, 156 S. W., 317; Weaver v. Shaw, 5 Texas, 286; Martel v. Hernsheim, 9 Texas, 294; Mills v. Alexander, 21 Texas, 154; Moke v. Brackett, 28 Texas, 443; Giddings v. Steele, 28 Texas, 732; Milam County v. Robertson, 47 Texas, 222; Rowlett v. Williamson, 18 Texas Civ. App., 28; Fine v. Freeman, 83 Texas, 529; Smith v. Buffalo Oil Co., 99 Texas, 77; Ellis v. Brooks, 101 Texas, 591; Dixon v. Lynn, 154 S. W., 656; Dalton v. Railroad Co., 159 Mass., 221; Nichells v. Nichells, 5 N. Dak., 125, 57 Am. St. Rep., 540; Turner v. Fleming, (Okla.) 130 Pac., 551, 45 L. R. A., N. S., 265; Youngberg v. El Paso Brick Co., 155 S. W., 715; Township v. Keller, 100 Pa. St., 105, 45 Am. Rep.; Faughnan v. City of Elizabeth, 33 Atl., 212; McIlvoy v. Russell, (Ky.) 29 S. W., 630.

An attorney, without a showing of special authorization, is quite unable to compromise his client's suit, or bargain away his client's property, or consent to any character of judgment on the merits against his client as part of a compromise settlement, 6 Corpus Juris Civilis, 657; Holker v. Parker, 7 U. S., 436; Wright v. Dailey,

111 Tex.—35

26 Texas, 730; Anderson v. Boyd, 64 Texas, 109; Peters v. Lawson, 66 Texas, 338; Anderson v. Oldham, 82 Texas, 228; Cook v. Greenberg, 34 S. W., 689; Hickey v. Stringer, 3 Texas Civ. App., 45, 21 S. W., 716; Cetti v. Dunman, 26 Texas Civ. App., 477, 64 S. W., 788. The rule where title to real estate is involved: Preston v. Hill, 50 Calif., 43; Filby v. Miller, 25 Pa. St., 264; Mackey v. Adair, 99 Pa., 143; Smith's Heirs v. Dixon, 60 Ky., 438; Robinson v. Murphy, 69 Ala., 545; Hall Safe & L. Co. v. Harwell, 6 So., 750; Benedict v. Wilhoite, (Ky.) 80 S. W., 1155.

Where an attorney compromises by accepting less than his client's claim: Watt v. Brookover, (W. Va.) 13 S. E., 1007; Mandeville v. Reynolds, 68 N. Y., 528; Senn v. Joseph, (Ala.) 17 So., 543; Jones v. Inness, (Kans.) 4 Pac., 95; Where an attorney dismisses suit he was employed to prosecute: Rhutasel v. Rule, 97 Iowa, 20; Kilmer v. Gallaher, 112 Iowa, 583. Where an attorney accepts property instead of money in satisfaction of his claim: Stackhouse v. O'Hara, 14 Pa. St., 88. A litigant dealing with opposing attorney is charged with notice of his limited authority: Robinson v. Murphy, 69 Ala., 548. As to express authority to compromise suit: Huffman v. Cartwright, 44 Texas, 296; Zimpelman v. Keating, 72 Texas, 318; Texas Moline Plow Co. v. Klapproth, 164 S. W., 399; Devlin on Real Estate, sec. 356. As to the effect on Conner's authority of the spectacular increase in value of Corbett's land: Hall v. Gambrill, 88 Fed., 709; Mechem on Agency, sec. 806; Tilleny v. Wolverton, (Minn.) 48 N. W., 908; Mulvane v. O'Brien, (Kans.) 49 Pac., 607; Wasweyler v. Martin, 78 Wis., 59; Proudfoot v. Wightman, 78 Ill., 553.

Where a person purchases a tract of land, agreeing to pay a certain sum of money therefor, and goes into possession of such lands under such contract of purchase, and enjoys quiet and peaceable possession, without such possession even being threatened, and without any outstanding title by reason of which such possession is in danger, he is not entitled, in law, to equitable relief, upon his filing suit against the grantor in such contract for title to said lands so acquired by him on the ground of the ten years statute of limitation, and pleading the four years statute of limitation against the contract price and the purchase money notes that he agreed to execute by the terms of such contract, but upon such repudiation of such contract the grantor is entitled to a rescission of such contract and entitled to recover said lands free from all liens and equities that otherwise might have arisen in favor of the grantee in such contract. Allman's renunciation of the purchase contract was complete, final, and irrevocable. Bolden v. Hughes, 107 S. W., 91; Smith v. Owen, 107 S. W., 923; Rutherford v. Mothershed, 92 S. W., 1021; White v. Cole, 87 Texas, 500; Efron v. Burgower, 57 S. W., 306; Stone Land & Cattle Co. v. Boon, 73 Texas, 548; Pell v. Chandos, 27 S. W., 48; Fullerton v. Doyle, 18 Texas, 15; Stinson v. Sneed, 163 S. W., 989;

Black on Rescission and Cancellation of Contracts, Book 1, pp. 3, 4, 8, 9, 576, 577, Book 2, p. 1581, 1582, 1583, 1587, and cases cited therein.

If Corbett's delay in clearing up his title was breach of contract, Allman's suit in trespass to try title and to cancel contract was his assent to the termination of the purchase contract. Goetzman v. Caldwell, 152 N. Y. Supp., 491; Zimmerman v. Branyan, 41 Atl., 689; Barrows v. Harter, 130 Pac., 1050; Ballard v. Walker, 3 Johnson's Cases, (N. Y.) 60; Stickter v. Guldin, 30 Pa., 114; Elliott on Contracts, Sec. 2026; Whittenberg v. Groves, 208 S. W., 901; Kelly v. Short, 75 S. W., 887; Kennedy v. Embry, 72 Texas, 387; Cornelius v. Harris, 163 S. W., 346; Raywood Canal Co. v. Sharp, 175 S. W., 499.·

*Nickels, Funderbunk & Strickland,* for defendant in error.—Earl Conner, as attorney for Corbett, as well as in his own right, had express authority to accept for himself and for Corbett the full amount which could become due under the contract, plus interest, and plus attorney's fees, and plus payment of all court costs, in satisfaction of Corbett's claims.

Even in the absence of express authority to do what he did in the premises, Earl Conner had implied authority to do all he did in the matter.

The cause was not "compromised" at all; Allman simply elected to pay the full amount which could become due under the contract, plus court costs, which he had the right to do, and, the tender having been made, Earl Conner, as attorney for Corbett and in his own right to the extent of one-fourth, simply accepted the amount tendered in satisfaction of the claim.

The so-called "compromise" was intrinsically fair and all presumptions will be indulged in favor of Conner's authority in the premises.

While the contract does not provide for compound interest and does not provide for attorney's fees, under any construction, in excess of 10 per cent, Conner calculated the principal with compound interest and with attorney's fees in excess of 10 per cent, and required Allmon to pay the sum of $937.35. This, of course, was paid in money, and it, as will be argued hereinafter, renders the cases of Wright v. Daily, 26 Texas, 732;. Portis v. Evans, 27 Texas, 577; Anderson v. Boyd, 64 Texas, 108; Peters v. Lawson, 66 Texas, 336; Cook v. Greenberg, 34 S. W., 687; Hickey v. Stringer, 21 S. W., 716, and Cetti v. Dunman, 64 S. W., 788, cited or referred to in Corbett's brief, wholly inapplicable as authorities against Conner's authority. The so-called "compromise" was not a "compromise" at all; it was a payment in full of the amount claimed by Corbett!

The case reached the Court of Civil Appeals and was there decided on June 17, 1916, and the result reported to Corbett by Conner. In

replying to this letter Corbett, apparently upon his own initiative, stated: "If Allman will pay me the face value of the contract, interest calculated yearly, and will pay all costs and will satisfy you outside, then we will settle with him." The new authority given in this letter was never revoked or attempted to be revoked or modified. In the so-called "compromise," Allman, through Conner, paid Corbett "the face value of the contract, plus interest calculated yearly" and paid all court costs and paid enough in addition to equal Conner's one-fourth interest, and then some.

But even if it should be held that Conner had exceeded his authority, Corbett is not out of trouble. There are certain other conditions required to be met by him before he can have any relief from the so-called "compromise." One of these conditions is fairly indicated in the opinion of the Supreme Court of the United States in Holker v. Parker, 7 Cranch, 436, and that is that he must have been "perfectly blameless. See also, Johnson v. Templeton, 60 Texas, 238; Padgitt v. Evans, 51 S. W., 513; Ames Iron Works v. Chinn, 49 S. W., 665.

The one act of the mere filing of a plea of limitation against the purchase money obligation is wholly insufficient to show a repudiation or abandonment of the contract by Allman. Before an election of remedies can be finally and irrevocably made, in any case, there must exist at least two co-existent available remedies. The notes, or the purchase money demand were not barred by limitation, and the remedy was not available to Allman, even though he had desired to and had urged the plea upon the trial, which he did not do. Robertson v. Cotes, 74 Texas 408; Rose v. San Antonio, etc., R. R. Co., 31 Texas, 49; Stribling v. Moore, 76 S. W., 593; Cotton Oil Co. v. Taylor, 45 S. W., 478. It follows, therefore, that Allman, by the filing of the plea, did not make a final election, even though it be thought that he intended to urge the plea, because the remedy was not existent and available. Griffin v. Williams, 142 S. W., 981; Wilson v. Carrol, 50 S. W., 222; Williams v. Emberson, 55 S. W., 595; Bandy v. Cates, 97 S. W., 711.

Under the record now before the court Corbett is not entitled to rescind the contract and recover the land, because of his own default and because he has shown no sufficient excuse therefor and because he has not shown by allegation or proof that he ever proffered compliance with the contract. Moore v. Giescke, 76 Texas, 543; Harris v. Catlin, 53 Texas, 1; Estes v. Browning, 11 Texas, 246.

Allman testified, and the court found as a fact, that about May 29, 1907, Allman had in cash $1200, and offered to pay the purchase price of the land, requesting the execution and delivery of the deed. We submit, therefore, that the uncontradicted evidence before the court shows that Corbett is not entitled to recover the land, and to this proposition we cite the following authorities: Moore v. Giesecke,

76 Texas, 543; Fullerton v. Doyle, 18 Texas, 4; Hamblen v. Folts, 70 Texas, 132; Brown v. Montgomery, 89 Texas, 250; Harris v. Catlin, 53 Texas, 1; Austin v. Ewell, 25 Texas Suppl., 404; Kallison v. Poland, 167 S. W., 1104; Brock v. Jones, 16 Texas, 461; Coddington v. Wells, 59 Texas, 49; Hart v. Bullion, 48 Texas, 278; Kaufman & Runge v. Brown, 83 Texas, 47; Huffman v. Mulkey, 78 Texas, 561.

The prayers of the respective parties are believed to be amply sufficient to warrant the court in decreeing any character of judgment that the evidence may warrant. Cecil v. Henry, 93 S. W., 216; Wells v. Houston, 57 S. W., 600; Pearson v. Cox, 71 Texas, 246; Lee v. Boutwell, 44 Texas, 151; Hipp v. Hutchett, 4 Texas, 20; Silberg v. Pearson, 75 Texas, 287; Garvin v. Hall, 83 Texas, 295; Nash v. George, 6 Texas, 234; Wintz v. Morrison, 17 Texas, 372; Cheeves v. Anders, 87 Texas, 287.

MR. JUSTICE PIERSON delivered the opinion of the court.

In 1901, plaintiff in error, Corbett, and defendant in error, Allman, entered into an executory contract by which plaintiff in error contracted to convey to defendant in error the tract of land in controversy. Plaintiff in error agreed to clear the title to the land as against some claimants in McLennan County in a suit pending in that county, and then to execute a warranty deed to defendant in error. This he neglected and failed to do. Defendant in error agreed to pay $300.00 for the land and the back taxes. He paid the taxes and $29.80, entered upon possession, made valuable improvements, and under the contract agreed to execute his notes for the balance of the purchase money when plaintiff in error had cleared the title as to the McLennan County claimants and executed his warranty deed to him.

In 1914 defendant in error brought this suit against plaintiff in error in trespass to try title, set up the contract, but alleged the statute of limitation of ten years against plaintiff in error's title and the statute of limitation of four years against the notes the contract called for to be executed by him. He also alleged improvements in good faith, and prayed that if he were not awarded the land he be permitted to recover for his improvements. He alleged that in 1912 he had offered the balance of the purchase money upon the execution of the deed, but that plaintiff in error did not execute the deed. He made no tender of the balance of the purchase money. However, he closed his prayer as follows:

"The plaintiff pays that he be quieted in his title and possession of the land and tenements, sued for by the plaintiff, but in the event that this relief can not be granted, under the facts, then that the court grant such equitable relief as the plaintiff may be entitled to receive, under all the facts, and that whatever rights the plaintiff may have be protected, and that the same be not jeopardized by a forced sale, and for general and special relief."

Plaintiff in error defended, alleging the contract and that defendant in error's possession was by virtue thereof, and that his possession was not adverse; that defendant in error by alleging limitation had repudiated the contract, and on account thereof had deprived himself of his equitable right to claim the benefits of his improvements. He prayed for rescission of the contract, to recover back the land, and that defendant in error be denied any recovery for improvements. He did not allege that he had cleared the title as to the McLennan County claimants, nor that he had tendered the deed provided in the contract. He alleged that he had at all times been willing to make deed and to receive the balance of the purchase money, but in his pleading and on the trial he did not offer to do so.

The trial court entered judgment decreeing the land to plaintiff in error upon rescission, but found for defendant in error for improvements in the sum of $1620.00.

From this judgment plaintiff in error appealed, urging that defendant in error, because of his plea of limitation as to plaintiff in error's title and as to the notes to be executed by him when plaintiff in error had cleared the title and executed to him a deed, had repudiated the contract and in equity could not recover for improvements in good faith.

The Court of Civil Appeals tried to adjust the equities between them, in view of the fact that neither of them had placed himself in position to demand equity, in that plaintiff in error had failed to keep his contract as to clearing the title and in not executing his deed, and defendant in error in pleading limitation against plaintiff in error in bar of his obligation to pay the balance of the purchase money under the contract.

It affirmed the judgment decreeing the land to plaintiff in error under rescission, denied to defendant in error improvements in good faith, but decreed that a stay of judgment be granted so that if on or before November 1, 1916, defendant in error should pay, or cause to be paid, to plaintiff in error the balance of the purchase money with interest from May 1, 1901, as provided in the contract, with costs of suit, then the title to the land should be vested in him, defendant in error.

From this judgment plaintiff in error sued out writ of error to this Court, and same was granted May 23, 1917.

On January 29, 1918, an agreed motion was filed in this Court to dismiss the cause, same being signed by the attorneys for both parties litigant, and on January 30, 1918, an order was entered dismissing the cause.

A few months later plaintiff in error filed his motion to reinstate the case, alleging that his attorney had no authority to settle the case and to dismiss it; that by so doing he had sacrificed plaintiff in error's rights to his great injury.

It appears that the relationship between plaintiff in error and his

attorney in regard to the collection of the balance of the purchase money from defendant in error, and in defending the suit, existed for a number of years—from early in 1912 to 1918—and that all their communications were by correspondence. Therefore, their letters disclose all that was said and done as to the attorney's authority to accept the unpaid purchase money and to settle the case.

An examination of the letters discloses that plaintiff in error was very negligent in attending to the matters, not only in having neglected to clear the title and not making deed to defendant in error from 1901 to 1914, but also in the matter of answering his attorney's letters and assisting him in the prosecution of or the defending of the suit. The negotiations between them were begun in 1912 (before defendant in error brought suit in 1914), in which plaintiff in error sought to employ the attorney to collect the balance of the purchase money. However, an agreement was reached in 1914, after the suit was filed. The attorney agreed to "undertake to collect the purchase money," and was to receive as compensation for his services 25% or one-fourth of the recovery, either in money or land.

On May 20, 1914, plaintiff in error, through a firm of attorneys at Houston, and with his approval, instructed his attorney that he could use his own judgment as to the matters of collecting the unpaid purchase price or of recovering the land.

After the trial of the case in the District Court with the result as stated above, plaintiff in error, on July 16, 1915, wrote his attorney as follows:

"Of course I do not want to buy these farms and I think you are right to appeal the cases.

"If you could reform the judgment by agreement and value the land something like $20 per acre and then give them the option to buy in a certain time and failure to buy would revert all to us. I had a judgment of this kind once."

On June 27, 1916, after decision by the Court of Civil Appeals, plaintiff in error in unambiguous language gave his attorney authority to do exactly what he did do when the suit was dismissed, except that he offered to give Allman terms, whereas cash was paid. His letter is as follows:

"Allman may be a good man but he had a mighty poor way of showing it in trying to beat me out of the land. Your views about the law are correcct. The court exceeded its authority and I want the case to go up. But if Allman will pay me the face value of the contract, interest calculated yearly and will pay all costs and will satisfy you outside, then we will settle with him, otherwise go on up with it. He has had the use of this land for 15 years and I should have a yearly rent in shape of annual interest compounded."

This was the last letter written by plaintiff in error to his attorney before the tender of the balance of the purchase money by Allman and all amounts demanded, in accordance with the terms of said last

letter, the acceptance thereof by the attorney, and the dismissal of the case in this Court on January 30, 1918.

On November 6, 1917, the attorney wrote plaintiff in error that Allman desired to know what plaintiff in error would take to settle his case, referred to a $400.00 deposit Allman had theretofore made in the Court of Civil Appeals, and informed plaintiff in error that there was an oil boom on there. Plaintiff in error received this letter, but made no reply to is; thus leaving his former instructions to his attorney undisturbed and in full force and effect.

It is urged by plaintiff in error that the lack of authority of his attorney to dismiss his petition for writ of error in this Court is fully shown, proven and demonstrated by the sacrifice of plaintiff in error's rights and property by said disposition of the case; that his injury and loss of rights and property are great and irretrievable unless the motion to reinstate is granted and the Court pass upon the merits of the case.

In all the correspondence from Corbett after judgment in the District Court he contends that that judgment was wrong; that he should not be held for improvements in good faith, and that he did not want to buy this land.

Before he could deny defendant in error the right to recover for his improvements made upon the land under his contract of purchase, even though defendant in error did attempt to repudiate said contract by pleading limitation against its terms, he, plaintiff in error, must show that he himself did equity and was entitled to demand and he accorded equity. Under his contract with defendant in error the duty first devolved upon him to do that stipulated therein that he should do, to-wit: to clear the title as to the McLennan County parties and to make deed to defendant in error. Neither in his pleadings nor in the trial did he offer any excuse for not having performed his contract, nor did he offer to execute the deed or to put himself in position to demand and receive the benefits of his contract. He not having done equity nor come into court ''with clean hands,'' he was not in position to take advantage of the inequitable stand taken by defendant in error.

This being the state of facts as to lack of equity on both sides, defendant in error had the right to waive plaintiff in error's default in not clearing the title as to the McLennan County parties, to tender the balance of the purchase money and demand a deed; or he had the right to a rescission of the contract, to release the land to plaintiff in error, and to pray for a return of purchase money paid, with interest, and for his improvements. However, he did not do this. Rather, he chose to repudiate the contract, tried to hold the land under limitation and yet claim the benefits of the improvements in good faith under the contract. This was inconsistent and inequitable. Thus both plaintiff in error and defendant in error in the trial court failed to offer to do equity. This failure to do equity

and to offer to do equity remained inherent in the case on appeal, and at once became the question of difficulty before the Court of Civil Appeals.

Now, referring back to the proposition that the dismissal of plaintiff in error's appeal in this Court by his attorney of record was an abuse of his rights in the case, to his irreparable injury, and to defendant in error's answer that said attorney secured for him all that he probably could have recovered upon another trial of the case, the consideration promptly suggests itself, what would be the rights of the parties upon a new trial?

Well, the parties would still find themselves where they were at the beginning. Plaintiff in error would have the right and opportunity to tender performance by showing that he had removed the cloud from the title, and to tender a deed and demand the purchase money, and, in default thereof by defendant in error, to rescind the contract and recover back the land unencumbered by any claim of defendant in error. If he was unable to show the removal of the cloud to the title as to the McLennan County parties, but was able to show diligence in regard thereto, and also to show that the contract was impossible of performance in that regard, and that the contract could not be performed, he then would have had the right, in the absence of an acceptance of the land by defendant in error without the cloud removed, to his cause of action to annul the contract and to place both parties back in statu quo. That is, in order to cancel the contract and receive the land back, he would have to tender to defendant in error the purchase money paid, with interest, and the value of the improvements placed upon the land, less the value of the use of the land during the period.

On the other hand, upon such a showing by plaintiff in error, defendant in error would have the right to accept an annulment of the contract and to receive back his money paid and the benefits of his improvements, or he would have also had the right to accept the title to the land from plaintiff in error as it was, to pay the balance of the purchase price, and to demand and to receive a deed from plaintiff in error.

Until plaintiff in error complied with his contract with reference to the title, and at least until he had tendered his deed to defendant in error, he could not demand of defendant in error the balance of the purchase money; neither could he rescind and demand the return of the land without reimbursing defendant in error for his improvements.

This, however, is what he was attempting to do, both, in the trial court and on appeal. His contention all the way was that he did not want to accept the land encumbered with the charge for improvements, but wanted the balance of purchase money or the land not so charged. Then, whether or not, under the pleadings and facts, an appellate court should affirm the judgment of the trial court (to

which he was protesting), or otherwise reform and adjust the equities between the parties, it could not be asserted that upon his adversary's doing that which equity required of him, his attorney, in dismissing his appeal under the authority in him under the facts of this case, had acted in bad faith and in utter disregard of his. interests.

Therefore, from the foregoing it will be seen that when plaintiff in error's attorney received from defendant in error all the balance of the purchase money and payment in full of all demands under the contract, he did no more than plaintiff in error would be compelled to accept upon another trial of the case. However, as stated before, we think express authority was given, and this express authority so given was not weakened, but strengthened and emphasized, by all the correspondence between them and the facts attendant upon the development and progress of this litigation and the nature and equities of the case. The authority of the attorney to act as he did in the disposition of the case having been expressly given, the plaintiff in error could not be prejudiced thereby.

In this connection, it is called to our attention that the attorney's fee was a contingent one-fourth interest in whatever was recovered in money or land. There is no charge or intimation that the attorney received anything other than his one-fourth of the proceeds under the contract, or that there was any improper motive on his part. Therefore, if he sacrificed his client's interests, he likewise sacrificed his own, his acts upon their face bearing the indicia of good faith.

Settlements and adjustments between parties litigant are not discouraged by the courts, but are encouraged. In a case like this, where the authority for an attorney to settle a case, with the terms thereof, is expressly given, and where these terms have been fully complied with by the attorney, and the settlement is free from fraud or bad faith, the court will not lightly set it aside.

The motion to reinstate the cause is overruled.