BEATY *v.* HUMPHREY, STATE AUDITOR.

4-5005

Opinion delivered April 11, 1938.

*Charles L. Farish,* for appellant.

*Jack Holt,* Attorney General, and *Leffel Gentry,* Assistant, for appellees.

*Rowell, Rowell & Dickey, Amici Curiae.*

McHANEY, J.   This appeal challenges the constitutionality of the Arkansas Barber Law, act 313, p. 1193, Acts of 1937.  It is charged in the complaint that appellant, a barber, and all other barbers in the state, will, by the enforcement thereof, be burdened therewith; that it will result in confiscation of private property without due process of law; and that it is a duplication of state agencies having power to prescribe sanitary regulations, in that the State Board of Health already prescribes such regulations.  It is said the act is unconstitutional because of the long period of time required to become a licensed barber, which, it is said, is a deprivation of the right to the pursuit of a vocation, as guaranteed under the Constitution; because the thirty days' notice required for Special Acts under Art. 5, § 6, of the Constitution of this state was not complied with; and that the Barber Board, contrary to the act, is attempting to secure $5,000 from the Governor's Emergency Fund to aid in carrying into effect the administration of said act, all of which, it is alleged, will result in irreparable loss and hardship to appellant and other barbers, unless prevented.  Prayer was for a temporary injunction against the State Auditor and State Treasurer to prevent them from paying out any funds, and that on final hearing such injunction be made permanent.  A temporary order was

issued as prayed. Appellees answered denying all the material allegations of the complaint as to the validity of said act. Trial resulted in a decree dismissing the complaint for want of equity, from which is this appeal.

We do not set out all the provisions of this act, as to do so would greatly extend this opinion to no useful purpose. It contains 25 sections, many of them of several paragraphs and subsections. Section 25 is the emergency clause and reads as follows:

"It is hereby ascertained and declared that the barbering profession in this state is utterly without regulation, that public health and general well-being demands that this profession be regulated both as to those who form a part of the profession and as to the sanitary conditions under which they labor. It is further declared that forty-one states of the Union now have uniform barber laws and that those who cannot comply with the health and sanitary features of said laws have migrated to the state of Arkansas and are following the profession in this state to the detriment of the general public, and because of all of these conditions, which exist; the immediate operation of this act is essential. An emergency is, therefore, declared to exist, and it being necessary for the immediate preservation of the public peace, health and safety, this act shall take effect and be in full force from and after the date of its passage and approval."

It appears from a comparison that the act in question, same being §§ 12069 *et seq.*, Pope's Digest, is almost an exact copy of the Texas Barber Law, Vernon's Ann. P. C., Art. 734a, construed and sustained as being constitutional in *Gerard* v. *Smith,* Court of Civil Appeals of Texas, 52 S. W. 2d 347, and reaffirmed in *Lackey* v. *State Board,* February 16, 1938, 113 S. W. 2d 768. Counsel *amici curiae* state, and we think correctly, that forty-six states of the American Union now have enacted the so-called Uniform Barber Law, and that without exception wherever the constitutionality of such laws have been brought in question, they have been sustained. *State* v. *Zeno,* 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422; *State* v. *Armeno,* 29 R. I. 431, 72 Atl. 216; *State* v. *Sharpless,* 31 Wash. 191, 71 Pac. 737; *State* v. *Walker,* 48 Wash.

8, 92 Pac. 775; *Timmons* v. *Morris,* 271 Fed. 721; *Louisville* v. *Schnell,* 131 Ky. 104, 114 S. W. 742; *State* v. *Briggs,* 45 Ore. 366, 77 Pac. 750, 78 Pac. 361, 2 Ann. Cas. 424; *People* v. *Logan* 284 Ill. 83, 119 N. E. 913; *Criswell* v. *State,* 126 Md. 103, 94 Atl. 549; *La Porta* v. *Board of Health,* 71 N. J. L. 88, 58 Atl. 115; *Marx* v. *Maybury,* 36 Fed. 2d 397, appeal dismissed 284 U. S. 691, 52 S. Ct. 5, 76 L. Ed. 583; *Clark* v. *State,* 169 Miss. 369, 152 So. 820; *State* v. *Lockey,* 198 N. C. 551, 152 S. E. 693; *Mundell* v. *Graph,* 62 S. Dak. 631, 256 N. W. 121; *Ransone* v. *Craft,* 161 Va. 332, 170 S. E. 610; *State ex rel.* v. *Laramie,* 40 Wyo. 74, 275 Pac. 106; *State Board* v. *Blocker,* 176 Ga. 125, 167 S. E. 298; *Harris* v. *State,* 56 Okla. Crim. 105, 34 Pac. 2d 289; *Banghart* v. *Walsh,* 339 Ill. 132, 171 N. E. 154.

In the cases just cited every conceivable constitutional question, both as to the Constitution of the state and of the United States has been raised and decided in favor of the validity of the statute. It seems that there are barbers everywhere that oppose such a law and they have not failed to litigate its constitutionality.

It is elementary that every presumption must be indulged in favor of the constitutionality of an act of the Legislature and that an act will not be declared unconstitutional unless the conflict between it and the Constitution is clear and palpable. In *Gerard* v. *Smith, supra,* Mr. Chief Justice PELPHREY, speaking for the court, said: "In beginning the discussion of this question, the first thought which naturally occurs is as to the power of the Legislature to enact any legislation governing the practice of barbering.

"If it has any such right, it comes within what is termed the police power. There have been many definitions of the term 'police power' and many cases before the courts of the country assailing statutes as not being within that power."

The court then quotes from a previous opinion *Spann* v. *City of Dallas,* 111 Tex. 550, 235 S. W. 513, 19 A. L. R. 1387, defining what is meant by the term "police power" and continued: "Laws regulating trades,

callings, and occupations in the interest of public health are universally upheld by the courts of this country, and, where the validity of such laws is challenged, it is no longer a question of authority to enact them, but rather a question of whether the trade, calling, or occupation is one involving the public health. *Hanzel* v. *City of San Antonio, supra;* 12 R. C. L. p. 1283, and authorities cited in footnotes. Therefore, we are confronted with the question of whether the regulation of the occupation of barbers is necessary to the public health.

"We are of the opinion that there can be no serious question but that there is danger of infection to the public from the carelessness and unskillfulness of barbers and from unsanitary methods of performing the functions of that occupation. The infection may be communicated from the barber himself to the customer or from one customer to another. Therefore, the regulation of the occupation is proper for the protection of the health of the public and, consequently, a proper subject for the exercise of the police power. This being true, then the act, if not invalid because of improper classification of the persons subject to its provisions, is not violative of the 'contract' clause nor the 'due process' clause of the Constitution."

It is a well settled rule in this state, that, where a statute is adopted from another state, decisions of that state previously rendered are binding on this state. *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865; *Morgan Utilities* v. *Perry Co.,* 183 Ark. 542, 37 S. W. 2d 74; *Conn. Gen. Life Ins. Co.* v. *Speer,* 185 Ark. 615, 48 S. W. 2d 553. Unless there is some constitutional provision in this state that differs from that of Texas, so as to make the act invalid for that reason, we must hold it valid here as it was adopted in this state subsequent to the decision in the Texas case just above cited.

Practically every contention made by appellant has been decided adversely to his contentions in one or more of the cases cited. One contention is that this is a local or special act and that the 30 days' notice required by art. 5, § 26, of our Constitution was not published and

exhibited before the General Assembly prior to the passage of said act. We cannot agree that this is a local or special act. It is statewide in its nature and effect and applies to every person alike. While its provisions relate particularly to barbers, it applies to all barbers, just as the provisions of the act creating the State Medical Board, the State Dental Board, and many others relate to a particular class.

Another suggestion is that "the principal object (of the act) seems to be an effort, camouflaged by law, to organize 4,000 barbers in the state of Arkansas, to compel a levy on each barber and barber shop, and to place the matter in the hands of a board of control to be appointed by the Governor, which, may or may not be political appointments, and which, under the powers granted, reduces itself, or could reduce itself, into a virtual monopoly of the barber trade." We think appellant's fears are unjustified, but even if such might be the result, injustices, if they do arise, may be corrected in the courts.

It is true the court said in *Replogle* v. *Little Rock,* 166 Ark. 617, 267 S. W. 353, that the constitutionality of an act must be tested, not by what has been done under it, but what could be done. But in the act under consideration, the rules and regulations authorized to be promulgated by the State Barber Board must be subject to the approval of the State Board of Health. Section 20 of said act 313.

In the Replogle case, *supra,* an act relating to the regulation of the plumbing business was held unconstitutional by a divided court. We think there is a wide distinction between the relation of the plumbing business to the public health and the relation of the barbering business to the public health. The plumber does not come in physical contact with the public, whereas the barber does as also every instrumentality used in his business. In that case it was conceded in the opinion of the majority that its decision was against the great weight of authority. We do not mean to impair the holding in that case. The police power of the state is one founded in public necessity and this necessity must exist in order to

justify its exercise. It is always justified when it can be said to be in the interest of the public health, public safety and public comfort, and when it is, private rights must yield to their security, under reasonable laws. For this reason, appellant's argument, that the act arbitrarily undertakes to regulate the habits, health and morals of the barbers, while in a measure true, cannot be the basis of holding it invalid. If there are 4,000 barbers in the state, as appellant suggests, and each one of them should render barber service for an average of five people each day, there would be 20,000 members of the public coming in daily physical contact with them, or 120,000 per week. Public necessity, therefore, seems to be manifest.

The suggestion that the Barber Board is attempting to secure $5,000 from the Governor's Emergency Fund to aid in carrying into effect the administration of said act could not have anything to do with its constitutionality. It is contended by counsel *amici curiae* that the act itself appropriates the funds arising from the enforcement of its provisions, a statement with which we do not agree.

The decree of the chancery court is correct, and is, therefore, affirmed.