CITY OF LITTLE ROCK *v.* SMITH.

4-6902                                         163 S. W. 2d 705

Opinion delivered July 13, 1942.

*Cooper Jacoway,* for appellant.

McHANEY, J.   Appellee, Billie Smith, who says she is a resident of Malvern, Arkansas, was arrested on the night of June 13, 1942, in her room at a hotel in the city of Little Rock, and charged with a violation of §§ 1 and 2 of ordinance No. 6249, prohibiting immorality and prostitution and § 3 fixing the punishment therefor.   Through her attorney, she pleaded guilty to the charge and paid a fine of $10.  Section 4 of said ordinance, as amended by § 3 of ordinance No. 6434, provides that if any person is convicted of a violation of said offense, "such fact shall be reported by the clerk of the municipal court to the city health officer; and on such conviction, the municipal judge or the city health officer is authorized to cause such person to be detained and examined by the city health officer or by a physician designated by the city health officer by use of the necessary tests and examinations, including the Wassermann blood test, to ascertain the presence of any venereal disease in a communicable

stage, provided that any evidence so acquired shall not be used against such person in any criminal prosecution." Section 5 of said ordinance provides: "Whenever any person, after the examination provided in section four of this ordinance, is found to be infected with a venereal disease in a communicable stage, the city health officer may, pending the imposition of or at the expiration of any jail sentence imposed on such person, when in the exercise of his discretion he believes that the public health requires it, commit such person found to be infected with a venereal disease in a communicable stage who fails to take treatment adequate for the protection of the public health, to a hospital or other place designated by the city health officer as a place of quarantine in the state of Arkansas for such treatment, even over the objection of such person so diseased or infected, provided the commitment can be done without endangering the life of the patient."

After her conviction appellee was detained and examined by the city health officer, and was found to be infected with a venereal disease, gonorrhea, in a communicable stage, and a Wassermann blood test for syphilis showed positive. She was thereupon ordered quarantined in the public health center, maintained by the United States Government in the city of Hot Springs, Arkansas, by the city health officer.

On June 16, 1942, appellee filed her petition for a writ of *habeas corpus* directed to the appellant, Gus Caple, sheriff of Pulaski county, in which she stated that she was unlawfully confined in the Pulaski county jail under said ordinance No. 6249 which was alleged to be void, and that she had been informed that she would be transferred to "a concentration camp" against her will.

The sheriff filed an answer to the petition for *habeas corpus,* setting up the matters aforesaid and many others as his authority for detaining appellee and attaching certified copies of ordinance No. 6249 and its amendatory ordinance No. 6434; also ordinance No. 6248 and its amendatory ordinance No. 6282, and asserting the validity of said ordinances as being a reasonable exercise of the

police power of the city for the protection of the public peace, health and safety, and that no right of appellee is being violated in or by them. He further alleged that he held appellee under and subject to the orders of Dr. L. L. Fatherree, city health officer, who should be made a party respondent to the petition. Dr. Fatherree was made a party and adopted, as his response, that of sheriff Caple.

Trial resulted in a holding, by the learned trial judge, that ordinances Nos. 6248 and 6249, as amended, are unconstitutional and void. The writ was granted and appellee was discharged upon her petition, but was ordered held subject to the action of the prosecuting attorney's office on a charge of prostitution, and was remanded to jail pending further orders of the court. The city, the sheriff and the city health officer have appealed, and the city attorney has filed an able brief in their behalf. Appellee has not favored us with a brief in her behalf.

The question presented is whether the ordinances of the city of Little Rock, above mentioned and parts of which are quoted, are valid as being within the police power of the city. If they are valid, then the action taken is not in excess of the authority conferred. There can be no doubt of the city's power to declare prostitution or immorality a criminal offense and to punish for a violation. Indeed appellee was so convicted and paid a fine therefor. This is not a criminal proceeding, but is one in the interest not only of appellee, but of the public. It is a proceeding to compel her to be quarantined, segregated from the public, to the end that she may be cured of the venereal diseases with which she is infected, and that she may not communicate them to others. When a cure is effected, the authority to detain her is at an end.

In *Williams* v. *State,* 85 Ark. 464, 108 S. W. 838, 26 L. R. A., N. S. 482, 122 Am. St. Rep. 47, it was said: "It is the duty of courts, in testing the validity of a given regulation, to resolve all doubts in favor of the legislative action, and to sustain it unless it appear to be clearly outside the scope of reasonable and legitimate regulation." In 16 C. J. S., § 183, it is said: "Health being a *sine qua non,* of all personal enjoyment, it is not

696

only the right but the duty of the state possessing the
police power to pass such laws as may be necessary for,
the preservation of the public health.'' In *Beaty* v. *Hum-
phrey*, 195 Ark. 1008, 115 S. W. 2d 559, we said: ''The
police power of the state is one founded in public neces-
sity and this necessity must exist in order to justify its
exercise. It is always justified when it can be said to be
in the interest of the public health, public safety, public
comfort, and when it is, private rights must yield to
their security, under reasonable laws.'' Can there be
any doubt that the legislature might enact valid legisla-
tion similar to the ordinances here in question? We
think not. If it could, then it can and has delegated this
power to municipalities. Section 9543 of Pope's Digest
makes it their duty to publish certain ordinances and
by-laws and power is conferred to ''make and publish
such by-laws and ordinances—to provide for the safety,
preserve the health, promote the prosperity and improve
the morals, order, comfort and convenience of such (mu-
nicipal) corporation and the inhabitants thereof.'' Sec-
tion 9589 provides: ''They shall have power to prevent
injury or annoyance, within the limits of the corporation,
from anything dangerous, offensive or unhealthy . . .''
So, the state's power to legislate in the protection of the
public health has been granted and delegated to munici-
palities, and its exercise by the city in the ordinances here
presented must be held to be within the grant, unless it
can be said that the power conferred on the city health
officer is unreasonable. Applying the rule above stated
in the Williams case, we cannot say that the power con-
ferred is ''clearly outside the scope of reasonable and
legitimate regulation.''

The venereal diseases with which appellee is afflicted
have become so widespread and so devastating in their
effects upon communities where prevalent as to become
a public menace. Many cities are now fighting more or
less successfully to overcome this menace and to prevent
degeneration into a race of cripples, paranoiacs and in-
sane. Camp Joseph T. Robinson, with its 25,000 young
men soldiers; Maumelle Ordnance Works and Arkansas
Ordnance Plant, each with thousands of workers, men and

women, are near the city of Little Rock, and these men and women, as well as our own citizens in the city, are entitled to protection against these dreadful and loathsome diseases. Here the necessity exists which justifies the exercise of the power, and the private rights of appellee, if any, must yield in the interest of the public security.

Section 9679, Pope's Digest, provides: "The city council shall have the power to establish a board of health, with jurisdiction for one mile beyond the city limits; and for quarantine purposes, in cases of epidemic, five miles; to invest it with such powers and impose upon it such duties as shall be necessary to secure the city and the inhabitants thereof from the evils of contagious and malignant and infectious disease; to provide for its proper organization and the election or appointment of necessary officers, and to make such by-laws, rules and regulations for its government and support as shall be required for enforcing the prompt and efficient performance of its duties and the lawful exercise of its powers."

The trial court thought this statute denied the right of the city health officer to quarantine appellee outside the city or county beyond the limits stated, in case of epidemics, five miles. We think the statute means that the jurisdiction of the board of health shall extend for one mile beyond the city limits, or five miles for quarantine purposes, in cases of epidemics. It has no reference to the place a person may be confined for quarantine purposes, but only to the extent of the jurisdiction beyond the city limits for the better protection of the inhabitants of the city. Section 6438 of Pope's Digest expressly authorizes and requires the city health officer to perform the duties "prescribed for him under the directions, rules, regulations and requirements of the State Board of Health." One of these regulations of the State Board of Health is No. 3, as follows: "Isolation of infectious cases until rendered non-infectious. Any health authority may, when in the exercise of his discretion he believes that the public health requires it, commit any commercial prostitute or other person apprehended and examined and found afflicted with said diseases or either of them who refuses or fails to take treatment adequate for the

protection of the public health, to a hospital or other place in the state of Arkansas for such treatment even over the objection of the person so diseased and treated, provided the commitment can be done without endangering the life of the patient.''

These rules have been upheld by this court in *Allen* v. *Ingalls,* 182 Ark. 991, 33 S. W. 2d 1099, and *State* v. *Martin & Lipe,* 134 Ark. 420, 204 S. W. 622. In the latter case we held this court would take judicial notice of the rules, orders and regulations of the State Board, and that it was authorized to make and promulgate rules and regulations for the prevention of infectious, contagious and communicable diseases, which was not a delegation of legislative power. Now, the above rule is authority to the city health officer to commit appellee onside the city of Little Rock and to confine her at the government health center in Hot Springs. See, also, §§ 1, 2, 3 and 4 of the Rules and Regulations of the State Board of Health under the heading ''Genito—Infectious Diseases (Syphilis, Gonorrhea and Chancroid).''

A number of cases of courts of other states sustaining similar legislation or ordinances are cited, one of which *Ex Parte McGehee, et al.,* 105 Kans. 574, 185 Pac. 17, 8 A. L. R. 831, is quite similar to the case before us. There, as here, the State Board of Health, under statutory authority, had adopted rules and regulations for the isolation and quarantine of persons exposed or afflicted with infectious disease, and these regulations authorized the city health officer to investigate such suspected cases and to isolate persons found to be so infected. A place of quarantine for men was provided at Lansing, Kansas. The city of Topeka passed an ordinance conforming to the state regulation, and under it the city health officer was authorized to quarantine persons infected with venereal diseases outside the city of Topea. McGehee was found to be infected with gonorrhea and was ordered quarantined at Lansing by the city health officer, and he sought release by *habeas corpus.* The language of the Supreme Court of Kansas, in denying the writ, is so applicable here that we quote the following with approval: ''The rules of the

State Board of Health and the city ordinance are assailed as unreasonable. In this instance only those provisions of the rules of the State Board of Health and of the city ordinance are involved which relate to isolation of persons who have been examined and have been found to be diseased. Reasonableness of provisions relating to discovery and to examination of suspects need not be determined. It may be observed, however, that while provisions of the latter class cut deeply into private personal right, the subject is one respecting which a mincing policy is not to be tolerated. It affects the public health so intimately and so insidiously that consideration of delicacy and privacy may not be permitted to thwart measures necessary to avert the public peril. Only those invasions of personal privacy are unlawful which are unreasonable, and reasonableness is always relative to gravity of the occasion. Opportunity for abuse of power is no greater than in other fields of governmental activity, and misconduct in the execution of official authority is not to be presumed.

"It is urged that the regulations in question are unreasonable, in that they authorize isolation in remote places beyond the limits of the city in which the petitioners reside. The court knows of no law, or rule of public policy or private right, which requires a person who, for the protection of the public must be isolated and treated for loathsome communicable disease, to be interned in the locality in which he may reside. It would have been competent for the State Board of Health to designate a single hospital for the detention of all persons in the state found to be so diseased, and it is entirely reasonable for cities having inadequate facilities, or having no facilities of their own, to take advantage of those provided by state authority. In this instance the city health officer's power to isolate is restrained by ordinance which requires the city commission to approve detention hospitals other than those provided by the city.

"In the application for the writ it is stated that the petitioner is not diseased. The question is one of fact, determinable by practically infallible scientific methods. The city health officer was authorized to ascertain the

fact. He has certified to the existence of disease, and, in the absence of a charge of bad faith, or conduct equivalent to bad faith, on his part, his finding is conclusive.

"In the application for the writ it is stated that, if the petitioners be diseased, they are able to provide themselves with proper treatment in an isolated place in the city of Topeka. The answer is: *The public health authorities are not obliged to take chances.*"

We, therefore, conclude that the court erred in holding said ordinances unconstitutional and void and in discharging appellee. The judgment is reversed and the cause remanded with directions to dismiss the petition for the writ of *habeas corpus* and to remand appellee into the custody of the sheriff for isolation and quarantine as ordered by the city health officer, and an immediate mandate shall issue.