The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71611
Dear Senator Bradford:
This is in response to your request for an opinion on the following:
 The Jenkins Memorial Children's Center, Inc. is a local nonprofit corporation which provides services to citizens of Pine Bluff. Some of the services are to individuals with disabilities and their families. Other services, such as hearing evaluations in a soundproof booth by a certified audiologist, are provided to citizens of all ages. The City of Pine Bluff has considered entering into a contract with the agency to provide these services to eligible disabled and non-disabled citizens within the city. Can a city, such as Pine Bluff, enter into a contract with a nonprofit corporation, such as Jenkins Memorial Children's Center, Inc., whereby the city would pay the nonprofit corporation to provide these services to eligible disabled and non-disabled citizens of Pine Bluff?
It must be initially noted that I cannot address the provision of services, generally, in the absence of specific information regarding the exact services being contemplated. I will, however, address your question concerning hearing evaluations.
Although my research has disclosed no case law directly on point, I believe that such a contract involving hearing evaluations would likely be subject to challenge as an illegal exaction, based upon the argument that this does not constitute a proper municipal purpose.
Municipalities have the power, in accordance with A.C.A. §14-55-102 (1987), to "publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." It has been stated that cities have broad discretion, under this so-called "general welfare clause," to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. Sander v. Blytheville, 164 Ark. 434,262 S.W. 23 (1924); City of Fort Smith v. Van Zandt,197 Ark. 91, 122 S.W.2d 187 (1938). It seems clear, however, that a necessity must reasonably exist in order for the city to exercise its police power. As stated by the Arkansas Supreme Court, "[t]he police power of the state is one founded in public necessity and this necessity must exist in order to justify its exercise."City of Little Rock v. Smith, 204 Ark. 692, 696, 163 S.W.2d 705
(1942), quoting Beaty v. Humphrey, 195 Ark. 1008,115 S.W.2d 559 (1938).
The question in this instance, therefore, is whether the city would be properly exercising its discretion in determining that a necessity exists, in order to preserve the health of its inhabitants, for the provision of free hearing examinations through one service provider for all its citizens. It is my opinion that notwithstanding the broad discretion accorded cities under the general welfare clause, the city would in all likelihood be unable to establish the necessity or the reasonableness of such a contract, in the absence of some unique set of circumstances justifying the provision of this service to all citizens at taxpayer expense. There are very few cases reflecting the court's likely approach to the issue. But the case of Dreyfus v. Boone, 88 Ark. 353 (1908) offers some guidance wherein the court considered the enforceability of two ordinances relating to the removal of deposits from unsewered privies. One ordinance regulated the construction and cleaning of the privies, and the other granted an exclusive right to one contractor for the cleaning service. The court found that the ordinances generally fell within the city's police power. Dreyfus,88 Ark. at 360-361.[1] It was determined, first, that the ordinances were justified because the privies could otherwise become unsanitary and dangerous to health. And it concluded that the grant of an exclusive right to one responsible contractor was proper as a means of assuring that the work was done properly.Id. at 359-361.
With regard to your specific question, even if it could be successfully contended that hearing evaluations are a proper subject of the city's police power,[2] it is my opinion that providing evaluations to all citizens at city expense would likely fail to withstand scrutiny. The reasonableness and the necessity of such a contract must be seriously questioned, particularly in light of the extensive state regulation in this area. See n. 2, supra. The state Licensure Act of Speech Pathologist and Audiologists was enacted "to help to assure the availability of the highest possible quality . . . audiology services. . . ." A.C.A. § 17-97-102 (Supp. 1993). Licensure is required under the act, and regulatory authority is vested in the State Board of Examiners in Speech-Language Pathology and Audiology. A.C.A. § 17-97-202 (Supp. 1993). The need for the city to provide hearing evaluations, through a contract with one provider, cannot, in my opinion, reasonably be established in view of the above.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The court held, however, that the ordinance awarding the contract imposed an illegal exaction upon the city's inhabitants because its purpose was to raise revenue through a fixed maximum price, with a portion of the profits going to the city. Id. at 362-363.
[2] Local regulation in the area would, in that event, possibly be authorized. But it must be recognized in this regard that the state has specific regulatory authority over persons offering audiology services to the public. See Licensure Act of Speech Pathologists and Audiologists, codified at A.C.A. § 17-97-101et seq. (Repl. 1992 and Supp. 1993). While the exact nature of any local regulation would have to be considered, the pervasiveness of state regulation in this area may, in effect, inhibit local action.