The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This is in response to your request for an opinion on whether the Pine Bluff City Council may lawfully institute an "on the job training" program for at-risk youth. Your letter states that the intent of such program is: 1) to provide at-risk youth meaningful and positive exposure to the world of work; 2) to take kids off the streets by providing a means for them to constructively occupy their time; 3) to provide for such youth to be rewarded from the experience of legitimately earning a paycheck; and 4) to provide these young people training in area such as job survival, employability skills, work ethics, responsibility, etc. Your questions in this regard are as follows:
 May a city of the first class with a mayor/council form of government through the use of a local sales tax, pay teenagers as worker trainees to perform duties within the below listed agencies? They would be city employees but they would work under the direction of the agency utilizing their services which agency will provide training services to the City's youth clientele.
1. Local, state and/or federal agencies;
2. Private non-profit (501 C-3) community service agencies;
3. Private businesses.
You have also asked that I provide an opinion on whether such a city may "purchase" on the job training time for such youths from a private business through a contract for services, and, if so, you inquire as to the appropriate method for accomplishing this objective.
Your questions raise several issues, among them the legality of using "sales tax" dollars for the stated purpose, whether the establishment of such a "job training program" would violate Arkansas Constitution, art 12, § 5, whether the creation of such a program is for a proper "municipal purpose" so as to insulate the city against liability under Arkansas Constitution, art. 16, § 13 (the illegal exaction provision), and whether any contract for services entered into by the City would be supported by adequate consideration.
It is my assumption that your reference to "sales tax dollars" denotes sales tax dollars levied for general city purposes and not to sales taxes levied for designated purposes other than job training programs. If this is the case, I can find no prohibition against the use of general sales tax dollars for such a program, assuming the program is for a proper municipal purpose. Certain city sales taxes are authorized to be expended for any purposes for which the city general fund could be expended. See,e.g., A.C.A. § 26-75-217 (1987).[1]
It is also my opinion that Arkansas Constitution, art. 12, § 5 does not stand as an impediment to the program you describe. That section of our constitution provides:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
In my opinion this provision is not implicated by the fact that the City of Pine Bluff would, under the program, be providing private employers with employees who are compensated by the City.[2] The provision above prohibits the obtaining or appropriating of money to the various entities listed. It has been held that this provision does not prohibit the conveying of "in-kind consideration." See City of Fort Smith v. Bates,260 Ark. 777, 544 S.W.2d 525 (1976) (holding that the constructing of a driveway by a city on private property in lieu of paying the owner cash for an easement was not prohibited). In addition, although there may be a fact question in this regard, presumably the listed entities would be providing some consideration in the way of training to these city employees.
It is also my opinion that this constitutional provision would not be violated by the City appropriating money, in the form of salary, to the "youth clientele" of the City. The youths would, as you indicate, be "employees" of the City, and it has been held generally that persons participating in public job training programs are not the recipients of a "gift" from the government, but are rather paid in order to accomplish a larger public purpose. See Martinez v. Socoma Companies, 11 Cal. 3rd 394, 521 P.2d 841, 113 Cal. Rptr. 585 (1974). It is my opinion therefore, that art. 12, § 5 does not stand as an impediment to the program you suggest with regard to any of the listed entities.
The more difficult question is whether the expenditure of funds for a job training program for at-risk youth would be for a proper municipal purpose. Municipalities have the power, in accordance with A.C.A. §14-55-102 (1987), to "publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." It has seen stated that cites have broad discretion, under this so-called "general welfare clause," to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. City of Fort Smith v. Van Zandt, 197 Ark. 91,122 S.W.2d 187 (1938); Sander v. Blytheville, 164 Ark. 434, 262 S.W. 23
(1924). It seems clear, however, that a necessity must reasonably exist in order for the city to exercise its police power. As stated by the Arkansas Supreme Court, "[t]he police power of the state is one founded in public necessity and this necessity must exist in order to justify its exercise." City of Little Rock v. Smith, 204 Ark. 692, 696,163 S.W.2d 705 (1942), quoting Beaty v. Humphrey, 195 Ark. 1008,115 S.W.2d 559 (1938). In addition, municipalities have broad authority over "municipal affairs" which are defined as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government. . . ." See A.C.A. §14-43-601 (1987). This statute excludes certain matters which are deemed "state affairs." Job training programs are not specifically excluded. Section 14-43-602 provides that any city of the first class is authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ."
The question therefore, is whether the implementation of a job training program for at-risk youth is a "municipal affair" and whether the City would be properly exercising its discretion in determining that a necessity exists for the provision of job training for such youths to "promote the prosperity" of the City. I have been unable to find any helpful case law on the first part of this inquiry. I have found no case, in this jurisdiction or any other, discussing the legality of a city job training program for such youths. The definition of a "municipal affair," however, is very broad. I am unable to state that such a job training program would fall outside this definition. In response to the second part of the inquiry (whether the City could properly determine, under the "general welfare clause" that a necessity exists for the provision of this program), I should note that again I have found no helpful caselaw from this jurisdiction or any other on this point. The question would ultimately have to be decided by the Arkansas Supreme Court. I cannot predict with any certainty what that court would hold on the question. It has been held in an analogous situation that the United States Congress' power to spend money in aid of the general welfare (see U.S. Const. art. I, § 8) authorizes federal programs to alleviate national unemployment. See Martinez, supra, citing Helveringv. Davis, 301 U.S. 619 (1937). The power of Congress over such matters, however, cannot be cited as authority for the undertaking of such projects by municipalities, the powers of which are strictly governed by statute. Absent a statute designating a job training program for at-risk youth as a municipal purpose, I am reluctant to conclude definitively that such a program would be upheld by the courts.
Finally, you inquire as to whether a city of the first class may "purchase" on the job training time from private businesses through a contract for services, and you inquire as to what the proper method is for accomplishing this contract. In my opinion the City would have the authority to enter into such a contract as long as it is supported by adequate consideration. See, e.g., Ops. Att'y Gen. 93-374 (city of the first class authorized to contract with private non-profit agency for provision of services to the aged); and 91-358 (city of the first class authorized to contract with private nonprofit for the operation of a recreational program). The adequacy of the consideration is a fact question which would have to be determined by a factfinder with access to all the surrounding circumstances. Id. at n. 1. The proper method for accomplishing such a contract would presumably be by use of written contract drafted by the counsel for the City and the private businesses involved.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It is my understanding, however, that the Arkansas Supreme Court's decision in Foster v. Jefferson County (No. 94-776, issued June 19, 1995) may impact upon the availability of funds for such a program, and that in fact the City may have to abandon plans for the program in light of this decision. I have in any event provided an answer to the questions posed, should this not be the case, or should the City need the answers to these questions for future implementation of the program.
[2] This office has previously opined that this provision of our constitution does not stand as a prohibition against the obtaining or appropriating of money to other public entities. See, e.g., Ops. Att'y Gen. 94-147 and 92-250.