The Honorable Sue Madison State Senator 573 Rock Cliff Road Fayetteville, AR 72701
Dear Senator Madison:
I am writing in response to your request for my opinion on the following questions:
 1. May a city enact an ordinance requiring that retrieval sites for vehicles towed non-consensually within the city limits be no greater than a certain number of miles from the city limits?
 2. Does a city have any right to regulate the prices charged for non-consensual tows within its city limits?
You indicate that these questions arise from the following factual background:
 The City of Fayetteville has had some complaints from visitors about the towing of their automobiles. Visitors are sometimes confused about parking regulations and often during festivals may find their motor vehicles have been towed. Unfortunately, some of the business contracts [are] with towing companies whose storage yards are quite a distance from Fayetteville, sometimes as far away as Pea Ridge.
Given your report that the nonconsensual towing at issue is based upon a violation of parking regulations, I will assume for purposes of my discussion that the towing was instigated by local law enforcement officers.
RESPONSE
In my opinion, the answer to your first question is "no." The legislature has expressly charged the law enforcement agency ordering a nonconsensual tow with the responsibility of drafting a written vehicle removal policy consistent with state law — a charge I believe would include determining which licensed towing service(s) will conduct the towing. A.C.A. §27-50-1207. Although the law enforcement agency might in its discretion consider distance in making this determination, I believe the determination remains the agency's to make. Likewise, with respect to your second question, I believe it lies solely within the law enforcement agency's discretion to determine whether to consider rates in drafting its written vehicle removal policy. Accordingly, I believe the answer to this question is also "no."
Question 1: May a city enact an ordinance requiring that retrieval sitesfor vehicles towed non-consensually within the city limits be no greaterthan a certain number of miles from the city limits?
In my opinion, the answer to this question is, in all likelihood, "no," given that the legislature has invested the law enforcement agency ordering the tow with the discretion to craft its own written vehicle removal policy consistent with state law. A.C.A. § 27-50-1207.
Your question is whether, notwithstanding the law enforcement agency's policymaking authority, a city might nevertheless by ordinance regulate certain terms and conditions of nonconsensual towing ordered by its law enforcement officers. The underlying principle in addressing this question is that municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. A municipality has no powers except those expressly conferred by the legislature and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. City ofLowell v. M N Mobile Home Park, Inc., 323 Ark. 332, 336,916 S.W.2d 95, 97 (1996).
The Supreme Court restated the restrictions on the scope of activities of municipalities in Burke v. Elmore, 341 Ark. 129, 132-33, 14 S.W.3d 872
(2000):
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
Municipalities have the power, in accordance with A.C.A. § 14-55-102
(Repl. 1998), to "publish by-laws and ordinances, not inconsistent withthe laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." (Emphasis added.) Cities have broad discretion under this so-called "general welfare clause" to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. City of Fort Smith v. Van Zandt, 197 Ark. 91,122 S.W.2d 187 (1938); Sander v. Blytheville, 164 Ark. 434, 262 S.W. 23
(1924). It seems clear, however, that a necessity must reasonably exist in order for the city to exercise its police power. As stated by the Arkansas Supreme Court: "The police power of the state is one founded in public necessity and this necessity must exist in order to justify its exercise." City of Little Rock v. Smith, 204 Ark. 692, 696,163 S.W.2d 705 (1942), quoting Beaty v. Humphrey, 195 Ark. 1008,115 S.W.2d 559 (1938). Subject to this restriction, municipalities have broad authority over "municipal affairs," which the Code defines as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government. . . ." A.C.A. § 14-43-601 (Repl. 1998).[1] Finally, A.C.A. § 14-43-602 (Repl. 1998) provides that any city of the first class is authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ."
Subchapter 12 of chapter 50 of title 27 of the Arkansas Code (Repl. 1994 Supp. 2003) sets forth the conditions and the procedure for conducting nonconsensual tows at the behest of law enforcement officers, which I assume is at issue in your request since you describe the underlying problem as being nonconsensual tows conducted when visitors to festivals in Fayetteville violate parking regulations. Subsection 27-50-1202(3) defines the term "nonconsent" as follows:
 "Nonconsent" means towing, storage, or recovery of any unattended or abandoned vehicle as defined in this subchapter or any disabled or inoperative vehicle for which the owner preference is waived by the owner or person in charge thereof[.]
Subsection (10) of this statute defines the term "unattended" as denoting "any vehicle left on public property without the consent of an authority in charge," subject to any one of seven other specified conditions.[2]
I gather that the vehicles in question were towed as "unattended" pursuant to this definition.
With respect to the question of which authority will determine what towing service will carry out a nonconsensual tow and where it will take the towed vehicle, A.C.A. § 27-50-1207 provides in pertinent part:
 (a)(1) Any law enforcement agency which directs the removal of unattended or abandoned vehicles shall adopt a written vehicle removal policy, the provisions of which shall not be in conflict with this subchapter.
* * *
 (b) All law enforcement officers shall comply with the policies prescribed by their agencies as to the removal of any unattended or abandoned vehicle as defined by this subchapter.
(Emphases added.) Specifically with respect to nonconsensual tows, I believe this statute authorizes the law enforcement agency in its own discretion to determine which licensed towing service(s) will perform nonconsensual tows,[3] irrespective of the distance between the site of the tow and the storage facility.[4] This is not to suggest that in drafting its written vehicle removal policy a law enforcement agency cannot dictate a maximum distance between the site of a nonconsensual tow and the storage facility; rather, it is only to suggest that the legislature has invested only the law enforcement agency, not the city council, with the authority to adopt any such policy. I do not believe the city is authorized to exercise its general police powers in a way that would restrict what I consider an express legislative grant of authority to law enforcement agencies regarding this matter.
Question 2: Does a city have any right to regulate the prices charged fornon-consensual tows within its city limits?
For the reasons stated in my response to your first question, I believe the answer to this question is likewise "no." In my opinion, A.C.A. §27-50-1207 clearly authorizes the various law enforcement agencies to determine without interference which licensed towing service(s) will conduct nonconsensual tows, basing that determination on its own written vehicle removal policy — a policy the legislature has not authorized the city to modify in any respect.
In order to ensure that the law enforcement agency will act disinterestedly in making this determination, the legislature enacted A.C.A. § 27-50-1207(c), which provides:
 No law enforcement officer shall suggest or recommend any particular towing and storage firm to the owner, to his or her agent, or to any competent occupant of any disabled or inoperative vehicle except in strict compliance with his or her agency's vehicle removal policy, nor shall law enforcement officers accept gifts or special consideration from the owner of a tow business or anyone acting on the owner's behalf in relation to removal of vehicles as provided by this subchapter.
(Emphasis added.) Having thus charged law enforcement officials with a duty to act impartially, the legislature further charged those officials with drafting a consistent policy regarding nonconsensual tows. Needless to say, any such policy might justifiably consider a particular service's rates in determining whether to use that service to conduct nonconsensual tows. Indeed, my inquiries reveal that the Arkansas State Police have recently adopted a policy of requiring towing services applying to conduct nonconsensual tows to submit their rates for consideration. However, I do not believe the city has the authority to dictate to any law enforcement agency what rates the agency will permit in conducting nonconsensual tows.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] This statute excludes certain specified matters that it classifies as "state affairs."
[2] These seven specified conditions are: vehicles left unattended on public property without consent for more than two days; vehicles within three feet of a "public way"; vehicles "on or near a public way" at a distance of "three feet (3') or more of the traveled surface of the public way" for more than a day; vehicles left unattended because of accidents; vehicles impounded by the police incident to arrest; vehicles "located upon any public right of way" that police determine constitute hazards; and vehicles located anywhere that are subject to police seizure "under the Arkansas Rules of Criminal Procedure or pursuant to lawful court order."
[3] Subsection 27-50-1203(c)(1)(A) of the Code authorizes the Arkansas Towing and Recovery Board to establish reasonable licensing requirements for any individual engaging in nonconsensual towing.
[4] My inquiries reveal that this discretion has prompted certain law enforcement agencies to specify one licensed towing service to conduct nonconsensual tows, whereas other law enforcement agencies have adopted a policy rotating among licensed agencies within a particular area.