The Honorable Jimmy Jeffress State Senator Post Office Box 904 Crossett, AR 71635-0904
Dear Senator Jeffress:
I am writing in response to your request for an opinion concerning a particular arrangement involving the sharing of a city's sales tax revenue. As background for your question, you state:
 A national retailer operates a retail outlet in each of two cities (City A and City B) within the same county in Arkansas. The national retailer plans to construct a new, larger retail outlet in City A. The planned retail outlet is expected to be over twice the size of the two smaller outlets combined. The new outlet is projected to be large enough to provide employment for the current employees of the two existing outlets. At, or after the opening of the new outlet, the two existing outlets will be closed. The retailer is mindful of the potential adverse impact the outlet closure will have on the city sales tax revenue of City B. To minimize this potential adverse effect, the retailer desires for City A and City B to share the city sales tax revenue the new outlet will generate.
Your specific question in this regard is as follows:
 Assuming the two cities are willing to enter such a revenue-sharing arrangement, is such an arrangement permissible under Arkansas law?
RESPONSE
It is my opinion that the answer to this question will depend upon a number of factual considerations that I am not in a position to evaluate, including the permissible use(s) of the sales tax according to the levying ordinance and ballot title. While the factual variables preclude a definitive opinion on the legality of the arrangement you have generally described, I will set forth the governing principles of law on the basis of which you can evaluate the specific proposal in question.
First, it must be recognized as a threshold matter that City A cannot share any portion of sales tax revenue that has been levied for another purpose. Article 16, Section 11 of the Arkansas Constitution provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." See also generally Hartwick v.Thorne, 300 Ark. 502, 506, 708 S.W.2d 531 (1989).
With regard to the particular sales tax at issue, therefore, the first and foremost question is whether the use of any portion of the tax for the contemplated revenue sharing arrangement would constitute a diversion of the tax from its stated purpose. I have not seen the levying ordinance or the ballot title and I have no other specific information regarding the sales tax levy in this instance. I will note, however, that a sales tax may be levied under various Arkansas Code sections and for specific purposes.[1] See, e.g., A.C.A. §§ 26-73-110—112 (special local sales and use tax); A.C.A. § 26-73-113 (alternative local sales and use tax); A.C.A. § 26-73-114 (dedication to school district). Additionally, such purposes may include pledging the tax to retire a bond issue. See, e.g.,
A.C.A. § 14-164-301 et seq. (Local Government Bond Act of 1985); A.C.A. § 26-75-201 et seq. (capital improvement bonds). The revenue-sharing arrangement you describe must therefore be evaluated in light of the specific purpose, if any, for which the tax was levied.
I also note in this regard that certain city sales taxes are authorized to be expended "for any purpose for which the city's general funds may be used." A.C.A. § 26-75-217(a) (Repl. 1997). This latter statute authorizes the local sales tax commonly known as the "operating penny." Seegenerally Hasha v. City of Fayetteville, 311 Ark. 460, 845 S.W.2d 500
(1993). If your question involves an "operating penny" levy, then I believe the issue focuses on whether the sales tax revenue sharing arrangement constitutes a proper municipal purpose for which City A's unobligated general funds may be lawfully disbursed. See generally Op. Att'y Gen. Nos. 95-165 and 88-274 (discussing the use of undesignated sales tax revenues pursuant to A.C.A. § 26-75-217).[2] Municipal officials are granted some measure of discretion in this regard. See,e.g., Op. 95-165, supra. They have the power, in accordance with A.C.A. § 14-55-102 (Repl. 1998), to "make and publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." It has been stated that cities have broad discretion, under this so-called "general welfare clause," to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. Sander v. Blytheville,164 Ark. 434, 262 S.W. 23 (1924); City of Fort Smith v. Van Zandt,197 Ark. 91, 122 S.W.2d 187 (1938). A necessity must reasonably exist, however, in order for the city to exercise its police power. City of LittleRock v. Smith, 204 Ark. 692, 696, 163 S.W.2d 705 (1942); Beatyv. Humphrey, 195 Ark. 1008, 115 S.W.2d 559
(1938).
I cannot opine whether the city officials would properly exercise their discretion in entering the "revenue-sharing arrangement" at issue. I acknowledge the possibility that the expenditure of city revenue toward the effort of securing a business's location within the city might properly be viewed as necessary in pursuit of the recognized public end of economic development. Cf. Halbert v. Helena-West Helena Ind. Dev. Corp.,226 Ark. 620, 625, 291 S.W.2d 802 (1956), Gordon v. Woodruff County,217 Ark. 653, 657, 232 S.W.2d 832 (1950), and Little Rock Chamber ofCommerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914) (recognizing industrial or economic development as a proper public purpose). Nevertheless, I lack sufficient information to satisfactorily evaluate the proposed arrangement in this instance. It appears from the limited information before me that City A certainly stands to benefit from the location of the new, larger retail outlet within its borders. But this alone is insufficient to determine whether the City may properly share any of the resultant new sales tax revenues with City B. I have no other information regarding the particular arrangement apart from your statement regarding the retailer's expressed desire to minimize the potential adverse impact that the existing outlet's closure is anticipated to have on City B's sales tax revenue. Again, this by itself does not illuminate a path to resolving the question of whether the sharing of the sales tax serves a proper municipal purpose. The connection, if any, between the retailer's decision to locate the new retail outlet in City A and the proposed revenue sharing arrangement undoubtedly bears on this question. However, I have no information in this regard.
Consequently, resolution of your question falls outside the scope of an opinion from this office. I am neither equipped nor authorized to undertake the fact-finding process that is necessary to evaluate and judge the contemplated revenue-sharing arrangement. If in fact this involves general "operating penny" sales tax revenue, the city may wish to seek the assistance of its local counsel who is better positioned to evaluate the proposed arrangement in light of the particular surrounding circumstances.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: EAW/cyh
[1] I also note that although the passage of Act 266 of 1971, codified at A.C.A. § 14-43-601—610, and often referred to as the "Home Rule Act," gave municipal corporations extensive authority over their municipal affairs, this act specifically provided that "[n]o municipality shall levy any sales . . . tax other than those authorized by law." A.C.A. §14-43-606(a) (Repl. 1998). See also A.C.A. § 26-73-103(g) (Repl. 1997) ("[u]ntil otherwise authorized by the General Assembly, cities and counties shall have no authority to levy any new sales or use taxes after April 1, 1977.")
[2] Because the funds in this instance would be directed to another municipality, it appears that your question does not implicate Ark. Const. art. 12, § 5, which prevents counties and municipal corporations from donating or appropriating money to private corporations, associations, institutions, or individuals. Although the parameters of the prohibitions of art. 12, § 5, are somewhat unclear in certain contexts, this office has consistently opined that governmental appropriations or donations to public entities in all likelihood do not violate art. 12, § 5. See, e.g., Ops. Att'y Gen. Nos. 2004-269, 96-287, 95-139, 94-147, 94-058, 93-274, 92-250, 92-099, 91-077, and 91-015.
Notwithstanding the inapplicability of Ark. Const. art. 12, § 5, it should be noted that there currently is no general authority for a city to share its sales tax revenue with another political subdivision. Senate Bill 957 in the current legislative session would, however, authorize such action through "compacts" and the creation of "revenue-sharing districts." In this regard, I reiterate that Ark. Const. art. 16, § 11
will prevent any diversion of a sales tax that was approved by the electors for a specific purpose. Accordingly, I assume that SB 957 would not apply to such a tax.