The Honorable Robin J. Carroll Prosecuting Attorney Thirteenth Judicial District 307 American Road, Suite 114 El Dorado, AR 71730
Dear Mr. Carroll:
I am writing in response to your request for my opinion on the following question:
 Is it a "legal city expenditure" for a city to pay educational expenses for its employees? Educational expenses are defined as tuition, books and miscellaneous fees which are not reimbursed by the employees.
By way of factual background, you report that "[t]he City of El Dorado was cited in its 2004 Legislative Audit for a policy it has that provides that the City pays for educational expenses of its employees," prompting the Mayor of El Dorado to request that you submit the above question for my consideration.
RESPONSE
I am unable to answer this question in the abstract, given that each city expenditure, including possible expenditures on employee training and education, must be assessed based upon its particular facts against the standards discussed below. However, I believe the policy would constitute an illegal exaction in violation of Ark. Const. art. 16, § 13 if it entailed automatically funding a city employee's education, irrespective of whether such funding was "indispensable" to the city's operations and primarily served a public purpose. *Page 2 
As an initial matter, I must note that Ark. Const. art. 12, § 4 provides as follows regarding municipal expenditures: "The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis. . . ." Municipalities generally have the power, in accordance with A.C.A. § 14-55-102 (Repl. 1998), to "publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." Cities have broad discretion under this so-called "general welfare clause" to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. City of Fort Smith v. VanZandt, 197 Ark. 91, 122 S.W.2d 187 (1938); Sander v. Blytheville,164 Ark. 434, 262 S.W. 23 (1924). It seems clear, however, that a necessity must reasonably exist in order for the city to exercise its police power. As stated by the Arkansas Supreme Court: "The police power of the state is one founded in public necessity and this necessity must exist in order to justify its exercise." City of Little Rock v. Smith,204 Ark. 692, 696, 163 S.W.2d 705 (1942), quoting Beaty v. Humphrey,195 Ark. 1008, 115 S.W.2d 559 (1938). Subject to this restriction, municipalities have broad authority over "municipal affairs," which the Code defines as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government. . . ." A.C.A. § 14-43-601 (Repl. 1998). Finally, A.C.A. § 14-43-602 (Repl. 1998) provides that any city of the first class is authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ."
The Supreme Court restated the restrictions on the scope of activities of municipalities in Burke v. Elmore, 341 Ark. 129, 132-33,14 S.W.3d 872 (2000):
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387
(1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. Recently, this court summarized what powers can be exercised by a municipality: *Page 3 
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
As the foregoing reflects, although a city has broad authority under its police power to protect the "general welfare" of its citizens, its power to act toward this end in any particular instance must be based either on an express or necessarily implied grant of legislative authority or, alternatively, upon a showing that the exercise of power is "indispensable (not merely convenient)" to a legitimate governmental purpose.
IIn light of these daunting restrictions on the exercise of municipal power, I share the concerns expressed by the Division of Legislative Audit regarding what your description implies is the city's general policy of "pay[ing] educational expenses for its employees." In the attached Ark. Op. Att'y Gen. No. 2005-062, my immediate predecessor addressed whether a county, in an effort to avoid failure-to-train lawsuits based upon 42 U.S.C. § 1983, could properly hire a law enforcement training officer and then finance his graduate education at public expense. In declining to offer a hard-and-fast opinion on this question, my predecessor pointed to the following factual considerations as ones that might occupy a reviewing court:
 I am neither authorized nor equipped to opine that the facts in this particular case would lead a reviewing court to any particular result; I can only remark generally that a reviewing court would in all likelihood inquire into the factual question of whether the proposed expenditure to hire a training officer and to finance his graduate education would serve a public, as opposed to a private, purpose. The court might inquire, inter alia, into the following questions: what training the police instructor would receive in his master's degree program; how that training would bear on the instruction he would provide officers; what, if any, "need for more or different *Page 4 
training," Canton [v. Harris, 489 U.S. 378, 391
(1989),]. . . exists with respect to the instructor's trainees that might warrant providing the instructor a free graduate education; what conditions would preclude an available public resource like a training academy from providing the instructor with additional training, and what likelihood exists of retaining a training officer who already possesses the requisite educational credentials. For the moment, based upon a review of all the facts, counsel for the county can advise the quorum court whether the proposed expenditure could withstand constitutional challenge under the standard discussed above.
(Footnote omitted.)
As this passage suggests, a reviewing court's focus in addressing the costs of defraying a public employee's educational expenses will be on whether these expenses are indeed necessary and serve a primarily public purpose.[1] I am unacquainted with the precise scope of the educational policy at issue in your request. As you have described it, however, the policy appears to be remarkably broad, quite possibly involving an across-the-board assurance by the city to subsidize an employee's education irrespective of whether doing so is "indispensable" to serve a valid "public purpose." If I am correct in this perception, I agree with the Division of Public Audit's apparent conclusion that the policy would result in an illegal exaction in derogation of Ark Const. art. 16, § 13.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General
[1] As my predecessor further noted:
 [T]he mere fact that a public expenditure results in a private benefit is not necessarily constitutionally offensive. See Ark. Op. Att'y Gen. No. 2004-319 (stating that "[a]n authorized use for a public purpose is not, however, invalid even though it involves an incidental private benefit") (quoting Ark. Op. Att'y Gen. No. 93-343
and citing 64 C.J.S. Municipal Corporations
§ 1725 (1950)); accord Ark. Op. Att'y Gen. No. 95-038. *Page 1